**Albert BOSSLEY and Elaine Bossley, Individually and as Representatives of the Estate of Roger Arthur Bossley, Appellants,**

v.

**DALLAS COUNTY MENTAL HEALTH AND MENTAL RETARDATION et al., Appellees.**

No. 05–91–00284–CV.

Court of Appeals of Texas, Dallas.

Feb. 17, 1995.

Rehearing Overruled Oct. 9, 1996.

---

690

Robert G. Oake, Jr., Law Offices of Robert G. Oake, Jr., Dallas, for Appellants.

Douglas A. Barnes, John F. O'Donnell, Brown McCarroll & Oaks Hartline, L.L.P., Dallas, Michael W. Eady, Brown McCarroll & Oaks Hartline, L.L.P., Austin, for Appellees.

Before THOMAS,[1] C.J., and CHAPMAN and KAPLAN,[2] JJ.

## OPINION

THOMAS, Chief Justice.

This appeal presents another opportunity for the courts to struggle with determining what constitutes a *condition* or *use of tangi-* *ble property* as those terms are used in the Texas Tort Claims Act (the Act). *See* TEX. CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986). The case presents the same dilemma expressed nineteen years ago by Chief Justice Greenhill when he said, "Our problem is trying to determine what the Legislature meant." *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 303 (Tex.1976) (Greenhill, C.J., concurring). Although the question of what constitutes the parameters of governmental immunity under the Act has been raised innumerable times, we seem to stay in a stall pattern, whipped in whichever direction a case may push a particular court or courts.

In this wrongful death suit, Albert and Elaine Bossley, individually and as representatives of the estate of Roger Arthur Bossley, deceased, appeal from a summary judgment granted in favor of Dallas County Mental Health and Mental Retardation (Dallas MHMR), John Kamphaus, M.D., Harold Urschel, M.D., Dora Pogue, R.N., Robbie Pugh, Laura Moore, Nettie Langley, Florence Bates, Danny Williams, Domingo Davilla, Patricia Prince, and Angela Jones. Appellants based their action on negligence. Appellees separately moved for summary judgment on the basis of sovereign immunity, official immunity, lack of proximate cause, and a statutory cap on damages. In four points of error, appellants generally contend the trial court erred in granting summary judgment. For the reasons set forth below, we reverse the trial court's judgment. Accordingly, we remand the cause to the trial court for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

In July 1988, Roger Bossley was suffering from major depression and unsuccessfully attempted suicide. Roger was taken to Parkland Memorial Hospital, transferred to the Mental Diagnostic Center, and eventually transferred to Hillside Center, a treatment facility owned and operated by Dallas

---

1. The Honorable Linda Thomas was on the original panel at the time this cause was submitted for decision. Justice Thomas was sworn in as Chief Justice on January 1, 1995.

2. Justice Jeff Kaplan participated in this case at the time it was submitted for decision. He did not, however, participate in the issuance of this opinion.

MHMR. Hillside is an "open" facility where patients have considerable freedom of movement. In fact, during Roger's residency, he had weekend passes and the ability to go on various outings, job interviews, and other activities away from the unit. Roger was a Hillside patient from July 25, 1988 until his death on August 12, 1988.

On August 9, Roger asked another patient where he could get a gun so he could kill himself when he got out. The patient immediately reported Roger's statement to Dr. Urschel, one of the treating physicians. Dr. Urschel noted in Roger's chart that he considered Roger to be "a definite risk to himself." Because of the need for a more restrictive environment, Dr. Kamphaus, another treating physician, ordered on August 11 that Roger be returned to the Mental Diagnostic Center for further evaluation. The transfer documents indicated that Roger remained suicidal despite his stay at Hillside.

Because it was not uncommon for patients to oppose being transferred to a more restrictive facility, Hillside had a regular practice of locking the front door of the residential unit when protective orders had been signed by a doctor and paperwork had been transmitted to the court. Thus, the outer door was locked after Dr. Kamphaus signed Roger's transfer documents. The unit also has a self-locking, inner glass door that is sometimes locked as a precautionary measure. Although Dr. Urschel considered ordering suicide and elopement precautions in this instance, he did not do so. Further, no one else ordered such precautions. Consequently, the inner door was not locked.

Although the doctors and some of the employees did not consider Roger an elopement risk, the summary-judgment evidence established that everyone considered him a risk to himself if he was released at that point. Apparently, Roger knew the transfer to the Mental Diagnostic Center would likely result in his being committed to Terrell State Hospital. In fact, Roger discussed with some of the appellees his fears about being transferred to Terrell. There was a noticeable change in Roger's behavior on the morning of his death. During the shift-change confer-

ence on the morning of Roger's escape, the Dallas MHMR employees discussed Roger's fear of going to Terrell. Further, they discussed that Roger might try to escape to avoid being transferred. At least one Dallas MHMR employee admitted that someone suffering from "major depression," who is considered to be suicidal, can be irrational and unpredictable.

On August 12, Angela Jones, a Hillside employee, returned to Roger's residential unit to get her purse so she could go to lunch. She saw Roger talking on the telephone, which was located in the hallway on the men's wing. Ms. Jones observed Roger for a few seconds and then started toward the door. Although Ms. Jones knew Roger was restricted to the unit, she did not tell anyone to watch him as she began to leave. She explained she was not the employee responsible for Roger at the time. Ms. Jones stated she did not recall seeing anyone watching Roger. She further admitted that if no one was watching him, she should have called out to someone before starting toward the door.

Ms. Jones first passed through the inner door that was closed, but unlocked. Once she got to the front door, Ms. Jones stated she looked around before beginning to unlock the door. She admitted, however, that the hallway area of the men's unit where the telephones are located could not be seen from the front door. Thus, she did not know Roger's location as she began to unlock the door. During the few seconds that it took to unlock the outer door and begin to open it, Ms. Jones heard footsteps behind her. At that point, Roger overpowered Ms. Jones and escaped through the open door.

Roger ran to Interstate Highway 30, approximately one-half mile from Hillside. He initially began to hitchhike toward Dallas. Upon being approached by a Hillside employee, Roger ran across the interstate and proceeded to hitchhike toward Fort Worth. As Dallas MHMR employees and the police began to approach Roger, he looked toward the employees, back to the police, and then toward an oncoming truck. Roger then jumped in front of the truck. He was killed on impact.

## STANDARD OF REVIEW

■ In reviewing a summary-judgment record, we apply the following standards:

1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in the nonmovant's favor and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). For a defendant, as movant, to prevail on summary judgment, it must either disprove at least one element of the plaintiff's theory of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *International Union UAW Local 119 v. Johnson Controls, Inc.,* 813 S.W.2d 558, 563 (Tex.App.—Dallas 1991, writ denied). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

■ Once the movant has established a right to summary judgment on the issues presented, the nonmovant has the burden to respond by presenting evidence that raises genuine issues of material fact. *Wheeler v. Aldama–Luebbert,* 707 S.W.2d 213, 215 (Tex.App.—Houston [1st Dist.] 1986, no writ). When a summary-judgment order does not specify the grounds on which it was granted, the order will be upheld on any ground asserted in the motion that meets the above criteria.[3] *See Tilotta v. Goodall,* 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

## APPELLANTS' ALLEGATIONS

The negligence allegations asserted against appellees are grouped and briefly summarized.

### 1. The Doctors

Dr. Urschel failed to take immediate action by either communicating with Dr. Kamphaus or ordering a transfer when he learned about Roger's comments. Both doctors failed to order suicide or elopement precautions. Further, they did not order that the outer and inner doors remain locked until Roger was transferred. Lastly, the doctors failed to order that Roger be placed in the seclusion room.

### 2. Dallas MHMR Employees [4]

They failed to adequately communicate Roger's suicidal condition and elopement risk to other staff members. Further, they failed to keep the inner door locked and failed to order any type of suicide or elopement precautions after they knew or should have known that Roger was suicidal and an elopement risk. Further, they failed to have someone monitor Roger and keep him within sight at all times while he was awaiting transfer.

### 3. Ms. Jones

Ms. Jones opened the door when she knew or should have known that Roger had access to the doorway because no one was monitoring him. Further, she opened the door without checking Roger's location or ensuring that the inner door was closed and locked. Finally, she did these acts when it was known that Roger was suicidal and an elopement risk.

## GOVERNMENTAL IMMUNITY

Appellants attack the summary judgment on the basis of governmental immunity, contending this defense is not available or, alternatively, that genuine issues of material fact

---

3. Because our order does not specify the grounds upon which the summary judgment was granted, appellants attacked each of the grounds raised. We will not discuss the points of error in the same order as presented by appellants.

4. This includes all of the named employees except Ms. Jones. The allegations against her are treated as a separate group.

were raised relative to the applicability of the defense.

### 1. Elements of Governmental Immunity

■ Under the Texas Tort Claims Act, the sovereign[5] is not liable for damages unless the alleged negligent or wrongful act falls within one of the statutorily defined exceptions. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 1986 & Supp.1995). Generally speaking, the waiver of governmental immunity arises in three areas: use of publicly owned vehicles, premises defects, and injuries arising from conditions or use of property. *See* Joe R. Greenhill & Thomas V. Murto III, *Governmental Immunity*, 49 TEX-AS L.REV. 462, 468 (1971). Appellants' cause of action could apply only to the last category of the Act, which provides in relevant part:

A governmental unit in the state is liable for:

(2) personal injury and death so caused by a *condition or use of tangible* personal or real *property* if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986) (emphasis added).

■ To allege a claim involving the "condition" of property, it is sufficient to allege that defective or inadequate property contributed to the injury. *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 31–2 (Tex. 1983). To state a claim involving the "use" of nondefective property, a party must allege the property was used or misused by an employee acting within the scope of employment so as to cause injury. *Salcedo*, 659 S.W.2d at 32. A nonuse of property does not trigger the waiver provision of the statute. *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994).

### 2. Appellants' Contentions

Appellants claim they have stated a cause of action under the Act because their negligence allegations involve both a condition and a use of tangible property. Specifically,

they assert that within the definitional terms of the Act,

the "condition" of the inner door (unlocked and open) and the "use" of the outer door by a [Hillside] employee (unlocking and opening the door without checking [Roger's] location or ensuring that the inner door was locked) proximately caused [Roger's] death by allowing him to escape the facility in a known suicidal condition.

Appellants assert that properly locked doors at Hillside were a part of Roger's required "protective equipment." Thus, they argue this case is controlled by *Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169 (Tex.1989) (failing to provide patient with life preserver was condition or use of tangible property within meaning of Act); *Lowe*, 540 S.W.2d at 297 (failing to furnish equipment for injured knee states cause of action under Act); and *Overton Memorial Hosp. v. McGuire*, 518 S.W.2d 528 (Tex.1975) (per curiam) (failing to provide sideboards or guards on hospital bed was cause of action within Act). Appellants further point out the property does not have to be the instrumentality of harm; rather, it only has to be involved. *See Salcedo*, 659 S.W.2d 30 (establishing use or misuse of tangible property itself proximately caused injuries not required).

### 3. Appellees' Contentions

Appellees generally contend that, at best, the allegations assert a failure to properly diagnose and treat which resulted in a "failure to order" the use of tangible property. They assert that many of the allegations are actually complaints about "errors in judgment." In addressing the issue of the doors, appellees argue the doors just happen to be pieces of property that "appear" in this lawsuit; the doors did not cause Roger's death. Appellees further characterize the unlocked inner door as constituting a "nonuse" of property rather than a use of property as required under the Act. Finally, they argue this case should be decided on the same basis as *Weeks v. Harris County Hosp. Dist.*, 785

---

5. It is undisputed that Dallas MHMR is a governmental entity to which the doctrine of governmental immunity applies.

S.W.2d 169 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (failing to restrain mental patient was not use or misuse of property under Act).

### 4. Application of Law to Facts

We note initially that with regard to proximate cause, the Texas Supreme Court in 1983 expanded the scope of governmental immunity to include wrongful conduct that involves misuse of property. *See Salcedo,* 659 S.W.2d at 33; *Huckabay v. Irving Hosp. Found.,* 802 S.W.2d 758 (Tex.App.—Dallas 1990, writ denied). The *Salcedo* court held that an "allegation of defective or inadequate tangible property is not necessary to state a cause of action under the Act if 'some use' of the property, rather than 'some condition' of the property, is alleged to be a contributing factor to the injury." *Salcedo,* 659 S.W.2d at 32. In construing the Act, the court explained that the negligent act of the government employee or officer must be the *proximate cause* of the injury, and the negligent conduct must *involve* "some condition or some use" of tangible property. *See University of Tex. Medical Branch v. York,* 871 S.W.2d 175, 178 n. 5 (Tex.1994) (explaining *Salcedo* ). Although *Salcedo* has since been criticized, *see Texas Dep't of MHMR v. Petty,* 848 S.W.2d 680, 687–89 (Tex.1992) (Cornyn, J., dissenting), it has not been overruled. Thus, contrary to Dallas MHMR's assertion, the property in this case does not have to be the instrumentality of harm, it need only be involved. Accordingly, for there to be a waiver of governmental immunity, appellants had to assert (i) an actionable theory of recovery (ii) that involved a use or condition (iii) of tangible property.

■ Appellants have alleged a negligence action; thus, they have asserted an actionable theory of recovery. Determining what constitutes tangible property, however, is an area that has caused considerable problems for our courts. *See Petty,* 848 S.W.2d at 688 n. 9 (Cornyn, J., dissenting). For purposes of this opinion, we adopt the definition used by the San Antonio Court of Appeals that tangible property is "property that is capable of being handled, touched, or seen." *See Robinson v. City of San Antonio,* 727 S.W.2d 40, 43 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.). The doors are capable of being handled, touched, and seen. Thus, the doors are tangible pieces of property.

The question remaining is whether the alleged negligent conduct *involved* "some condition or some use" of tangible property, *i.e.,* the doors, under circumstances where there would be private liability. We will address appellants' allegations that the "use" of the outer door by an employee and the "condition" (unlocked and open) of the inner glass door subject Dallas MHMR to liability.

### A. Use of Outer Door

■ Appellants alleged Hillside employee Angela Jones negligently unlocked and opened the front door without checking Roger's location. Appellants assert this act of negligence allowed Roger to escape and later commit suicide. Assuming, as we must in the context of summary judgment, that Jones was negligent in unlocking and opening the door, we conclude appellants have asserted conduct that involved "some condition or some use" of property. In doing so, we disagree with appellees' characterization of Jones's act as a failure to keep a proper lookout or a failure to monitor or ascertain Roger's location, and not a use of the door. The question is whether her conduct in opening the door involved a use of property. Jones used the door, and Roger was able to flee the facility. Thus, we conclude Jones's conduct involved a use of property, *i.e.,* the outer door.

### B. Condition of Inner Door

■ More problematic, however, is the issue of whether the self-locking, inner glass door constituted a defective condition as opposed to the nonuse of a lock. Cases interpreting whether a claim involves a condition or use of property reflect the problems our courts have had in determining the extent of liability. Because of the inconsistencies in the case law regarding whether a cause of action falls in the Act's provision, we are

given plenty of options but little direction as the various fact situations are presented.[6]

Nevertheless, we agree with appellants that this case is most similar to *Overton*. In *Overton*, a hospital patient was injured after falling from a bed not equipped with protective side rails. The supreme court assumed, for purposes of summary judgment, that the hospital had a duty to install the rails and was negligent for failing to do so. Thus, the court concluded that "injuries proximately caused by negligently providing a bed without bed rails are proximately caused from some condition or some use of tangible property." *Overton*, 518 S.W.2d at 529.

Like the bed in *Overton*, the *self-locking*, inner glass door in this case was inadequate or defective for its purpose, when we assume, as we must in the context of summary judgment, that the door was negligently unlocked. The door was *self locking*, which suggests that it should automatically lock when closed, unless the lock mechanism is disengaged or the door is propped open. Consequently, the very design of the door had to be altered. A jury could conclude

that a given purpose of a self-locking door is to prevent patients from walking freely through that door to the outer area of the facility. We acknowledge Hillside is an open facility; however, it apparently planned for circumstances when patients could not freely move in and out of the facility.

In this case, Dallas MHMR provided Hillside as a holding area for Roger until he could be transported back to the Mental Diagnostic Center by sheriff's deputies. This was because of concerns that Roger was a serious threat to himself. Nevertheless, the inner self-locking door was unlocked (although the outer door was ordered locked), and Roger was allowed to escape. By unlocking the inner door, the door was defectively incomplete for its intended purpose. In the context of a summary judgment, we must presume the conduct of the doctors and staff in failing to ensure that the door remained locked was negligent. Accordingly, we conclude the alleged negligent conduct involved a "condition" of property, as opposed to a nonuse of property.

In reaching this conclusion, we necessarily reject the argument that *Weeks* compels a

---

6. *Compare Brantley v. City of Dallas*, 545 S.W.2d 284 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.) *with Green v. City of Dallas*, 665 S.W.2d 567 (Tex.App.—El Paso 1984, no writ). Both cases involved alleged negligence on the part of emergency medical technicians. In each instance, the paramedics used items of property, such as sphygmomanometers and stethoscopes. After the examinations, the paramedics refused to transport the patients to the hospital. Brantley transported himself to the hospital for treatment. Green died en route to the hospital as the paramedics were working on him during a second call. Green's wife and Brantley sued the City of Dallas. In Brantley's case, the court determined he did not state a cause of action under the Act because he did not allege an erroneous judgment was made because of negligence in the use of the property or because of a defect in the equipment. By contrast, Mrs. Green was allowed to pursue her action against the city under the Act because the court determined that the failure to use the various items of cardiac equipment located in the ambulance during the first examination constituted an improper use of property. The difference in the right to recover was that the *Green* court determined Mrs. Green stated a "use" cause of action while the *Brantley* court concluded Brantley's allegations constituted a "nonuse" of property.

The problem was most recently illustrated by the supreme court's decision in *Kassen*. In con-

curring and dissenting opinions, two justices disagreed with the majority's conclusion that the plaintiffs had not stated a cause of action under the Act. *See Kassen*, 887 S.W.2d at 15. In *Kassen*, Parkland Memorial Hospital agents confiscated a woman's medication. The woman demanded the return of her medication and threatened to throw herself in front of a car if she did not receive the pills. The hospital refused, and the woman left the hospital and committed suicide by throwing herself into freeway traffic. The majority concluded that the plaintiffs did not allege an injury arising from the "use" of medication; rather, plaintiffs alleged a nonuse case. Chief Justice Phillips and Justice Gammage both dissented on this point. *Kassen*, 887 S.W.2d at 15 (Phillips, C.J., dissenting) ("If defendants had really 'not' used' the medication, it would have remained in [the woman's] possession, not theirs."), (Gammage, J., dissenting) ("I am incredulous that the majority call it a 'non-use' of tangible physical property to *confiscate* medication prescribed by other physicians from the owner for whom it was prescribed, and then knowingly and consciously *withhold* it from her.").

For an extensive review of the cases interpreting whether a claim is sufficient to state a cause of action under the Act, *see Hatley v. Kassen*, 859 S.W.2d 367, 377 nn. 7 & 8 (Tex.App.—Dallas 1992), *aff'd in part, rev'd in part*, 887 S.W.2d 4 (Tex.1994).

contrary disposition. *Weeks* also involved a woman who committed suicide after walking away from a hospital. Unlike Roger, however, the "patient" in *Weeks* had not been formally admitted to the hospital, and the appellants had no intention of admitting her into the facility. *Weeks,* 785 S.W.2d at 171. Thus, the hospital had not assumed a duty of care for the patient in *Weeks,* while Dallas MHMR had assumed such a duty with respect to Roger.

We hold that Dallas MHMR failed to conclusively establish that Roger's death was not caused by a condition or use of tangible property. Thus, summary judgment based on governmental immunity was improper. We sustain the second point of error.

## OFFICIAL IMMUNITY

Appellants also attack the summary judgment on the basis of official immunity, asserting this affirmative defense does not apply to the Dallas MHMR doctors and employees. Alternatively, they argue fact issues exist on whether these appellees are entitled to benefit from this defense.

### 1. Elements of Official Immunity

 Official immunity is a common-law defense that protects government officers and employees from personal liability in performing discretionary duties in good faith within the scope of their authority. *Kassen,* 887 S.W.2d at 8; *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Whether a government officer or employee enjoys immunity from tort liability is a separate question from the immunity of the sovereign itself. *Baker v. Story,* 621 S.W.2d 639, 643 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.). If a plaintiff has a right of action against the government due to the state's waiver of sovereign immunity, this right is not affected by whether a government employee has official immunity. *Kassen,* 887 S.W.2d at 8.

For summary judgment to be proper, appellees had to conclusively establish the official immunity defense. To establish official immunity, appellees had to show (i) they performed discretionary functions (ii) in good faith (iii) within the scope of their authority

as employees of Dallas MHMR. *Kassen,* 887 S.W.2d at 9. The parties do not dispute that elements two and three were met. The issue is whether appellees were performing "discretionary" functions entitling them to official immunity.

 If an action involves personal deliberation, decision, and judgment, it is discretionary; actions that require obedience to orders or the performance of a duty to which the actor has no choice are ministerial. *City of Lancaster,* 883 S.W.2d at 654. In other words, discretionary functions receive protection; ministerial duties do not. *Kassen,* 887 S.W.2d at 9. Although official immunity ordinarily extends to any "discretionary" act or decision by a government employee, not all discretionary acts performed by government-employed medical personnel are entitled to official immunity. Under the Texas Supreme Court's recent decision in *Kassen, medical* discretion is distinguished from *governmental* discretion when applying the doctrine of official immunity to government-employed medical personnel. Government-employed medical workers are immune from claims arising out of the exercise of *governmental* discretion but are not immune from liability arising from the exercise of *medical* discretion. *See Kassen,* 887 S.W.2d at 11. Thus, the question is whether appellees' exercise of discretion was medical or governmental.

### 2. Application of Law to Facts

 The crux of appellants' complaint is that Roger was allowed to escape from Hillside because of the negligence of Dallas MHMR workers and doctors in failing to properly secure the facility when they knew Roger was a high risk for suicide.

In their motions for summary judgment, the doctors and Dallas MHMR workers describe their duties as (i) gathering information on individual patients, (ii) evaluating that information, and (iii) making a decision based on that information. The doctors stated these duties required "deliberation and *exercise of ... professional judgment* in the care and treatment of ... patients." (Emphasis added.) Likewise, the Dallas MHMR workers stated these duties required "deliberation

and exercise of ... judgment, *professional and otherwise,* in the care and treatment of ... patients including Roger Arthur Bossley." (Emphasis added.)

We conclude, based on these affidavits, that at all relevant times, appellees were exercising medical rather than governmental discretion. Nothing in appellees' affidavits suggests that governmental factors or concerns colored appellees' discretion in failing to ensure that Roger could not escape prior to his transfer. Because there is nothing in the affidavits to suggest the discretion was anything but medical, we conclude appellees failed to conclusively prove that they exercised governmental discretion. Consequently, the trial court erred in granting summary judgment on this ground. We sustain the first point of error.

## PROXIMATE CAUSE

Appellants further attack the summary-judgment order on the basis of lack of proximate cause. They contend they raised genuine issues of material fact as to whether appellees' negligence proximately caused Roger's death and, thus, summary judgment was improper.

### 1. Elements of Proximate Cause

■ The two elements of proximate cause are cause in fact and foreseeability. "Cause in fact" means the act or omission was a substantial factor in bringing about the injury, and without it, harm would not have occurred. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992). "Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the dangers his or her negligent act created for others. Foreseeability does not require an individual to anticipate the precise manner in which injury will occur once the person has created a dangerous situation through negligence. *Travis,* 830 S.W.2d at 98. An intervening action of a third party will not excuse the first wrongdoer if such act should have been foreseen. *Northwest Mall, Inc. v. Lubri–Lon Int'l, Inc.,* 681 S.W.2d 797, 803 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

### 2. Parties Contentions

Appellants contend Roger's self-destructive act was foreseeable. They point out Roger's suicide was the precise action the appellee-doctors were attempting to avoid by ordering him transferred to the Mental Diagnostic Center. Further, the employee-appellees were responsible for preventing this occurrence.

Appellees contend the actual cause of Roger's death (impact with a vehicle) was too remote to be connected with the negligence of Ms. Jones and the other appellees in failing to take proper suicide precautions.

### 3. Application of Law to Facts

■ The summary-judgment evidence established that: (a) Roger was being treated because he had attempted suicide; (b) he still exhibited suicidal tendencies; (c) the doctor-appellees decided he was a sufficient danger to himself that he needed a more secure environment; (d) Roger knew his transfer from Hillside was likely to result in his being committed to Terrell; (e) Roger expressed fear of going to Terrell; (f) on the morning of his suicide, the Dallas MHMR employees discussed the fact that Roger might be an elopement risk to avoid being transferred; (g) Roger was not constantly monitored; (h) appellee Jones opened the door without determining Roger's location; (i) she knew that because the inner door was unlocked, someone could run out the outer door when she opened it; and (j) Roger escaped through the open door. We conclude, based on this evidence, that material fact issues exist on the proximate cause of Roger's death. Therefore, the trial court improperly granted summary judgment on this basis. We sustain the third point of error.

## CAP ON DAMAGES

In their final point of error, appellants complain the trial court erred in granting summary judgment on the ground that the Act limits damages to $100,000. Appellees pleaded this ground in the event the trial court found they were not immune from suit. The trial court, however, found appellees were immune from suit. Consequently, the

trial court did not address the issue of the statutory cap on damages.

It is fundamental that a court has no jurisdiction to render an advisory opinion on a controversy that is not yet ripe or to decide a case on speculative, hypothetical, or contingent fact situations. *Camarena v. Texas Employment Comm'n,* 754 S.W.2d 149, 151 (Tex.1988). Because the amount of damages to be assessed in this case is contingent on a finding of liability and no such finding has yet been made, we conclude this point of error would require us to issue an advisory opinion. Accordingly, we will not address the issue of a statutory cap on damages.

### SUMMARY

This case is yet another instance illuminating the ultimate private-public controversy in our political and legal systems: the privilege of governmental immunity versus the protection of the individual. The dilemma we face in seeking closure, however, is that the law regarding governmental use or nonuse of tangible property remains unclear, despite the supreme court's latest attempt to provide clear guidelines to trial judges and appellate courts.

The state government and the innumerable ancillary governmental agencies that serve the more than seventeen-and-a-half million people within Texas are obliged to perform their duties properly. On the occasions that they do not do so, under the present case law, there can be too much discretion on one side and too little consideration for the other. A rule of law should not be applied one way in one region and operate in an opposite way in another region. A standard of fairness and the right of recovery for injuries should not depend upon the victim's geographic location. The only remedy is the establishment of uniformity through consistency in definitions and application. We agree with former Chief Justice Greenhill that whether the waiver is narrow or broad, our courts must have a standard against which to make an appropriate judgment. *See Lowe,* 540 S.W.2d at 303 (Greenhill, C.J., concurring).

We reverse the trial court's judgment and remand the cause to the trial court for further proceedings consistent with this opinion.