TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00625-CV







Darrell and Betty McIntosh, as Next Friends of Scott Bradley McIntosh,

a Minor , Appellants


v.


James Alexander, Ph.D., Appellee





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 92-02173B, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING






 Appellants, Darrell and Betty McIntosh, as next friends of their minor son, Scott McIntosh,
sued James Alexander, appellee, the administrator of Llano County Memorial Hospital, alleging medical
malpractice and negligence in the obstetric care and delivery services provided to Betty McIntosh and
Scott, her newborn son. The trial court granted Alexander's motion for summary judgment, in which he
argued that he was immune from liability based on the affirmative defense of official immunity. In three
points of error, the McIntoshes contend the trial court erred in granting summary judgment. We will affirm
the judgment.


FACTUAL AND PROCEDURAL BACKGROUND


 In December 1987, Mrs. McIntosh developed complications in her pregnancy and was
admitted to Llano County Memorial Hospital (the "Hospital"), where a cesarean section was performed. 
According to the McIntoshes, the cesarean delivery was extensively delayed by the unavailability of Keith
Copeland, a Certified Registered Nurse Anesthetist, to provide the required anesthesia services. 
Additionally, the McIntoshes alleged that Dr. Michael Dennis, the Hospital's chief of staff, was under the
influence of alcohol and codeine in December 1987. The McIntoshes assert that as a result of these
circumstances, Scott McIntosh was born severely brain damaged.

 The McIntoshes originally filed suit in the district court of Travis County against Alexander,
Copeland, the Hospital, and three physicians, including Dr. Dennis, for their negligence, including the failure
to correct the inadequate anesthesia coverage at the hospital. (1) The McIntoshes specifically alleged that
Alexander was negligent in failing to correct the known problem of lack of anesthesia coverage for the
hospital in obstetric and emergency cases by adequately staffing the hospital, and in allowing Dr. Dennis
to practice medicine while impaired. The Travis County district court transferred venue to Llano County. 
The Llano County district court granted summary judgment in favor of Copeland and Alexander. On
appeal, this Court reversed, holding that the district court erred in transferring venue from Travis County
to Llano County. See McIntosh v. Copeland, 894 S.W.2d 60, 65 (Tex. App.--Austin 1995, writ
denied).

 On remand, and after the cause was transferred back to Travis County, Alexander again
moved for summary judgment. In his motion, Alexander contended he was entitled to summary judgment
on the McIntoshes' claim for negligence because (1) he had conclusively established the affirmative defense
of official immunity, and (2) he had conclusively established that he was not negligent. The trial court
granted summary judgment for Alexander, stating that he had met his burden of proof on the affirmative
defense of official immunity; the court severed the claim against Alexander, allowing this judgment to
become final. The McIntoshes perfected this appeal.


DISCUSSION


 In a summary judgment case, the issue on appeal is whether the movant met his summary
judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled
to judgment as a matter of law. Cate v. Dover, 790 S.W.2d 559, 562 (Tex. 1990); City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979); see Tex. R. Civ. P. 166a. The burden of
proof is on the movant, Acker v. Texas Water Comm'n, 790 S.W.2d 299, 301-02 (Tex. 1990), and all
doubts about the existence of a genuine issue of material fact are resolved against the movant. Cate, 790
S.W.2d at 562. Therefore, we must view the evidence and its reasonable inferences in the light most
favorable to the nonmovant. Nixon v. Mr. Property Management, 690 S.W.2d 546, 549 (Tex. 1985).

 In deciding whether there is a material fact issue precluding summary judgment, all conflicts
in the evidence will be disregarded, and the evidence favorable to the nonmovant will be accepted as true. 
Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995). An affidavit from the
movant cannot be conclusive unless it is uncontroverted and is "clear, positive and direct, otherwise
credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex.
R. Civ. P. 166a(c). The summary judgment will be affirmed only if the record establishes that the movant
has proved all essential elements of the movant's cause of action or defense as a matter of law. Clear
Creek, 589 S.W.2d at 678.

 In their first two points of error, the McIntoshes contend the trial court erred in granting
summary judgment for Alexander based on the affirmative defense of official immunity. (2) Official immunity
is a common law defense that protects government officers from personal liability for the good-faith
performance of discretionary duties within the scope of their authority. City of Lancaster v. Chambers,
883 S.W.2d 650, 653-54 (Tex. 1994). The purpose of official immunity was explained by the supreme
court in Kassen v. Hatley, 887 S.W.2d 4 (Tex. 1994):


 The purpose of official immunity is to insulate the functioning of government from the
harassment of litigation, not to protect erring officials. The public would suffer if
government officers, who must exercise judgment and discretion in their jobs, were subject
to civil lawsuits that second-guessed their decisions. Official immunity increases the
efficiency of employees because they need not spend time defending frivolous charges.



Id. at 8 (citations omitted). Thus, the articulated basis for such immunity is the importance of avoiding
distraction of officials from their governmental duties, the desire to avoid inhibition of discretionary actions,
minimizing deterrence of able people from public service, avoiding the cost of an unnecessary trial, and
insulating officials from burdensome discovery. Travis v. City of Mesquite, 830 S.W.2d 100, 102 n.4
(Cornyn, J., concurring).

 For summary judgment to be proper, Alexander had to conclusively establish the elements
of official immunity. See Montgomery v. Kennedy, 669 S.W.2d 309, 310-11 (Tex. 1984). To establish
official immunity, Alexander had to show that (1) he performed a discretionary function (2) in good faith
(3) within the scope of his authority as administrator of the Hospital. Kassen, 887 S.W.2d at 9. The
parties do not dispute that Alexander's staffing decision and supervision of Dr. Dennis were within the
scope of his authority and that such actions were discretionary. However, the McIntoshes argue, first, that
Alexander's decisions were not made with governmental discretion and, second, that his summary
judgment proof fails to show that Alexander acted in good faith as a matter of law.

 An action is discretionary if it involves personal deliberation, decision, and judgment. 
Actions that require obedience to orders or the performance of a duty to which the actor has no choice are
ministerial. City of Lancaster, 883 S.W.2d at 654. In other words, discretionary functions receive
protection, while ministerial duties do not. Downing v. Brown, 935 S.W.2d 112, 114 (Tex. 1996);
Kassen, 887 S.W.2d at 9. Although official immunity ordinarily extends to any "discretionary" act or
decision by a government employee, not all discretionary acts of government-employed medical personnel
entitle the employee to official immunity. Under the supreme court's recent decision in Kassen, medical
discretion is distinguished from governmental discretion when applying the doctrine of official immunity
to government-employed medical personnel. Government-employed medical workers are immune from
liability arising out of the exercise of governmental discretion, but are not immune from liability arising from
the exercise of medical discretion. See Kassen, 887 S.W.2d at 11. In the present case, we conclude that
Alexander was not a medical professional; (3) he was a hospital administrator with duties separate from the
medical staff. See Tex. Health & Safety Code Ann. §§ 263.071-.077 (West 1992). Thus, he could not
have been exercising medical discretion and, therefore, is immune from liability if he acted in good faith.

 The McIntoshes argue, however, that the Kassen holding extends beyond medical
personnel to any government employee exercising non-governmental discretion. They contend Alexander
was exercising professional discretion, rather than governmental discretion, in staffing the hospital and thus
is not entitled to official immunity. We disagree. Assuming without deciding that the principle established
by Kassen reaches beyond the medical profession, so that any government employee is entitled to immunity
only for his governmental discretion but not his professional discretion, we believe Alexander's decision
not to schedule a full-time anesthetist and his supervision of Dr. Dennis were made within his governmental
discretion.

 While Alexander's summary judgment proof did not give an explicit governmental reason,
such as lack of money or shortage of staff, for his staffing decisions, staffing in itself contains a meaningful
governmental element in the economic concerns inherent in that decision-making process. In making
decisions regarding medical staff of a county-owned hospital, monetary concerns are always of vital import. 
While Alexander was permitted to make hospital expenditures and salary decisions without the approval
of the hospital board, all of his decisions had to be made within the hospital's annual budget. Unlike a
private-sector provider, the administrator of a county-owned hospital must decide how to allocate a scarce
pool of state resources. See Kassen, 887 S.W.2d at 10. Because of these circumstances, the good-faith
performance of such governmental responsibilities should not be subject to second-guessing in the
courtroom. See id.

 The McIntoshes also contend Alexander was not entitled to summary judgment on the basis
of official immunity because he failed to establish the good-faith element of official immunity. Specifically,
the McIntoshes argue that Alexander's affidavit in support of his summary judgment is insufficient to prove
good faith as a matter of law. In City of Lancaster, the supreme court adopted a good-faith test consisting
of "objective legal reasonableness." 883 S.W.2d at 656. This standard applies in all official immunity
cases. Murillo v. Garza, 881 S.W.2d 199, 202 (Tex. App.--San Antonio 1994, no writ). The element
of good faith is satisfied when it is shown that a reasonably prudent person in the same or similar
circumstances "could have believed" his actions to be lawful and reasonable. City of Lancaster, 883
S.W.2d at 656-57. This does not mean Alexander must prove it would have been unreasonable to provide
the anesthesia coverage the McIntoshes allege was necessary; nor must Alexander prove that all reasonably
prudent hospital administrators would have taken similar measures. See id. at 657. To controvert summary
judgment proof on the issue of good faith, the nonmovant must do more than show that a reasonably
prudent person would not have taken the same action: "[T]he plaintiff must show that 'no reasonable
person in the defendant's position could have thought the facts were such that they justified defendant's
acts.'" Id. at 657 (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993)).

 Using the foregoing test, the summary judgment evidence in this case conclusively
establishes that Alexander acted in good faith. The McIntoshes contend Alexander's affidavit, submitted
in support of his motion for summary judgment, does not meet the good-faith standard because it is a purely
subjective statement. In his affidavit, however, Alexander specifically states he acted according to an
objective standard of what a hospital administrator of ordinary prudence would have done under the same
or similar circumstances. See Cameron County v. Alvarado, 900 S.W.2d 874, 880-81 (Tex.
App.--Corpus Christi 1995, writ dism'd w.o.j.). Furthermore, while Alexander was aware of the lack
of anesthesia coverage for emergency obstetric patients, he was confronted with the significant problem
of the hospital's finances and the hospital's inability to comfortably meet its payroll. As well, it was
Alexander's understanding that the hospital and its physicians did not handle or accept high risk obstetric
cases, so the hospital's anesthesia coverage problem was not given as high a priority as other hospital
problems. With respect to his supervision of Dr. Dennis, Alexander's affidavit states unequivocally that
he was not aware of any reports or indications that Dr. Dennis had a potential problem with drug and
alcohol use until the fall of 1988, nine months after Scott Bradley McIntosh was born. In any event, we
conclude that the summary judgment evidence shows conclusively that a reasonable person in Alexander's
position could have thought his actions were justified and reasonable. See City of Lancaster, 883 S.W.2d
at 657. The McIntoshes' summary judgment evidence fails to raise a fact issue to the contrary. We
overrule points of error one and two.


CONCLUSION


 Having overruled points of error one and two, we need not address the McIntoshes' third
point of error. We affirm the judgment of the trial court.



 J. Woodfin Jones, Justice


Before Justices Powers, Jones and Hill*


Affirmed


Filed: June 12, 1997


Do Not Publish



* Before John G. Hill, Chief Justice (former), Court of Appeals, Second District of Texas. Sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. The McIntoshes settled with the three physicians, and the district court rendered an agreed
judgment as to those defendants.
2. The terms "official," "quasi-judicial," "good faith," "discretionary," and "qualified" immunity
appear to be used indiscriminately and interchangeably by some courts. See City of Houston v. Kilburn,
849 S.W.2d 810, 812 n.1 (Tex. 1993); Travis v. City of Mesquite, 830 S.W.2d 94, 100 n.2 (Tex. 1992)
(Cornyn, J., concurring).
3. Government-employed medical personnel are considered to be employees having duties directly
relating to the care and treatment of patients; this would include, at least, doctors, nurses, and emergency
medical technicians. See Gross v. Innes, 930 S.W.2d 237, 240 (Tex. App.--Dallas 1996, writ
requested); Bossley v. Dallas Cty. Mental Health & Mental Retardation, 934 S.W.2d 689, 697 (Tex.
App.--Dallas 1995, writ requested). Alexander's primary responsibility is hospital administration. Thus,
his duties only indirectly relate to the care of patients.



e action: "[T]he plaintiff must show that 'no reasonable
person in the defendant's position could have thought the facts were such that they justified defendant's
acts.'" Id. at 657 (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993)).

 Using the foregoing test, the summary judgment evidence in this case conclusively
establishes that Alexander acted in good faith. The McIntoshes contend Alexander's affidavit, submitted
in support of his motion for summary judgment, does not meet the good-faith standard because it is a purely
subjective statement. In his affidavit, however, Alexander specifically states he acted according to an
objective standard of what a hospital administrator of ordinary prudence would have done under the same
or similar circumstances. See Cameron County v. Alvarado, 900 S.W.2d 874, 880-81 (Tex.
App.--Corpus Christi 1995, writ dism'd w.o.j.). Furthermore, while Alexander was aware of the lack
of anesthesia coverage for emergency obstetric patients, he was confronted with the significant problem
of the hospital's finances and the hospital's inability to comfortably meet its payroll. As well, it was
Alexander's understanding that the hospital and its physicians did not handle or accept high risk obstetric
cases, so the hospital's anesthesia coverage problem was not given as high a priority as other hospita