DALLAS COUNTY MENTAL HEALTH AND MENTAL RETARDATION, et al., Petitioners,

v.

Albert BOSSLEY, individually, Elaine Bossley, individually, and as representatives of the estate of Roger Arthur Bossley, deceased, Respondents.

No. 97–0028.

Supreme Court of Texas.

Argued Nov. 4, 1997.

Decided April 14, 1998.

Rehearing Overruled June 23, 1998.

David J. LaBrec, Katherine Elizabeth Anderson, Douglas Barnes, Dallas, Michael W. Eady, Austin, John F. O'Donnell, Dallas, for Petitioners.

Robert G. Oake, for Respondents.

HECHT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, ENOCH, OWEN, BAKER and HANKINSON, Justices, join.

We again construe and apply the waiver of governmental immunity for liability for "personal injury and death [proximately] caused by a condition or use of tangible personal or real property" contained in Section 101.021(2) of the Texas Tort Claims Act, TEX. CIV. PRAC. & REM.CODE § 101.021(2). We also consider the scope of governmental employees' immunity provided by Section 101.106 of the Act. We conclude that the court of appeals erred in reversing summary judgment for defendants. 934 S.W.2d 689.

## I

Following a failed suicide attempt, 27–year–old Roger Bossley was involuntarily committed to Parkland Memorial Hospital in Dallas and later transferred to Hillside Center, a treatment facility owned and operated by the Dallas County Mental Health and Mental Retardation Center. Patients resident at Hillside are allowed some freedom to come and go, and during his treatment Roger left Hillside on various outings and visited his parents on a weekend pass. For two weeks he seemed to be recovering from the severe depression that had driven him to try to take his own life, but after a rehabilitation counselor unaware of his condition ridiculed his employment history, Roger became so despondent that he asked another patient at Hillside where he could get a gun so he could kill himself upon his release. That patient immediately reported Roger's statement to Dr. Urschel, one of the treating physicians, who noted in his medical chart that Roger was "a definite risk to himself." Two days later another treating physician, Dr. Kamphaus, ordered that Roger be returned to Parkland for further evaluation in a more restrictive environment. The transfer documents indicated that Roger remained suicidal despite his hospitalization.

As soon as Roger was ordered transferred, Hillside personnel, following standard procedure, locked the front door of the residential unit because patients often resisted transfer to more restrictive facilities and tried to elope. Roger had himself indicated his reluctance to being transferred, telling Hillside staff members that he feared it would result in his being committed to Terrell State Hospital. Although the front door was locked, a self-locking glass door just inside the front door was left open. The physicians and staff considered further precautions against Roger's possible suicide and elopement, but none were taken.

The next day as Angela Jones, a Hillside technician, was leaving for lunch, she noticed Roger talking on a telephone in the hallway. Passing through the inner doorway, she left the self-locking inner door open behind her. Before unlocking the outer door, she looked around and saw no one nearby. But during

the few seconds it took Angela to unlock and open the door, Roger approached her from behind, pushed her aside, and fled. Hillside staff members chased Roger about half a mile to Interstate Highway 30, where he attempted to hitchhike a ride with passing motorists, first on one side of the freeway and then on the other. As Roger was approached by Hillside personnel and police who had by then joined in pursuit, he leaped into the path of a truck and was killed.

Roger's parents, Albert and Elaine Bossley, sued Dallas County MHMR, Jones, Kamphaus, Urschel, and eight other Hillside employees for wrongful death and on behalf of Roger's estate. Defendants moved for summary judgment on the grounds that because Dallas County MHMR is a governmental unit, TEX. HEALTH & SAFETY CODE § 534.001, it is immune from liability, TEX. CIV. PRAC. & REM.CODE § 101.021(2), and so are its employees, *id.* § 101.106. Plaintiffs responded that their claims came within the statutory waiver of immunity for "personal injury and death [proximately] caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law". *Id.* § 101.021(2). Specifically, plaintiffs contended that Roger's death was caused by Jones's unlocking the outer door without first locking the inner door or checking on Roger's whereabouts. The district court granted defendants' motion.

Plaintiffs appealed, and the court of appeals reversed the summary judgment. From a statement in *Salcedo v. El Paso Hospital District,* 659 S.W.2d 30, 33 (Tex. 1983), that negligent conduct for which immunity is waived "must involve 'some condition or some use' of tangible property", the court reasoned that the involvement of some condition or use of tangible property is enough for immunity to be waived. 934 S.W.2d at 695. Concluding that Jones's conduct involved the use or condition of the doors to the building, the court remanded the case for further proceedings.

In this Court, defendants contend that they are immune from liability to plaintiffs under Sections 101.021(2) and 101.106 of the Tort Claims Act. The Attorney General has filed an amicus curiae brief, arguing that "[n]egligence in the use or condition of real property does not state a cause of action under the Act, unless it is a premise defect claim under section 101.022(1)." *See University of Texas–Pan American v. Valdez,* 869 S.W.2d 446 (Tex.App.—Corpus Christi 1993, writ denied); *but see City of Waco v. Hester,* 805 S.W.2d 807 (Tex.App.—Waco 1990, writ denied). Defendants do not make this argument, however, and we find it unnecessary to address it. We confine our consideration to the parties' contentions.

## II

### A

We take as our starting point the premise that in Texas a governmental unit is immune from tort liability unless the Legislature has waived immunity. *Harris County v. Dillard,* 883 S.W.2d 166, 168 (Tex.1994) (citing authorities). The decision as to who should bear responsibility for governmental employees' misconduct should be made by the people's representatives. Therefore, whether a governmental unit is immune from liability for a particular claim depends entirely upon statute. The pertinent statute in this case is the Tort Claims Act, TEX. CIV. PRAC. & REM.CODE §§ 101.001–.109. Before looking at the provision applicable here, it is important to recognize that the Legislature intended the waiver in the Act to be limited, not unlimited, as shown in the history of its passage.

In 1967, the House of Representatives passed H.B. 728, which waived governmental immunity completely. H.J. OF TEX., 60th Leg., R.S. 1271 (1967). But the bill died on a tie vote in the Senate Committee on Jurisprudence. *See* Joe R. Greenhill & Thomas V. Murto III, *Governmental Immunity,* 49 TEX. L.REV. 462, 467 (1971). Both legislative houses then commissioned interim study committees to consider whether and to what extent governmental immunity should be waived. *See* SENATE INTERIM COMMITTEE TO STUDY GOVERNMENTAL IMMUNITY, REPORT TO THE 61st LEGISLATURE (1969) (in response to S.R. 733, 61st Leg., R.S. (1967)); HOUSE

INTERIM COMMITTEE TO STUDY DOCTRINE OF SOVEREIGN IMMUNITY, REPORT OF THE HOUSE INTERIM COMMITTEE TO STUDY DOCTRINE OF SOVEREIGN IMMUNITY 1969 (in response to Tex. H.S.R. 396, 60th Leg., R.S. (1967)). Although the interim committees recommended no more than a very limited waiver, Senator Oscar Mauzy and Representative Temple Dickson sponsored bills that would again waive governmental immunity in most circumstances. *See Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 302 (Tex.1976) (Greenhill, C.J., concurring). While Representative Dickson's bill, H.B. 456, was pending, however, the Legislature enacted H.B. 117, which called for a more limited waiver of immunity. *See id.* H.B. 117 was still too broad for Governor Preston Smith, who vetoed it, explaining that while "the time has arrived when the doctrine of absolute governmental immunity must be reconsidered ... [H.B. 117] is so broad and all-encompassing in scope as to impose upon the taxpayers of the State of Texas an onerous burden.... [A] more limited modification of the doctrine of governmental immunity should be considered by the Legislature." Veto Message of Gov. Smith, Tex. H.B. 117, H.J. OF TEX., 61st Leg., R.S. 1621 (1969). In response, the Legislature passed an amended version of H.B. 456 containing a more restricted waiver of immunity than H.B. 117, which the Governor signed into law as the Tort Claims Act. Tort Claims Act, 61st Leg., R.S., ch. 292, 1969 Tex. Gen. Laws 874 (then codified at TEX. REV.CIV. STAT. ANN. art. 6252–19 (Vernon 1970)).

■ The many compromises necessary to pass the Act obscured its meaning, making its application difficult in many cases, including this one. But one thing is clear: the waiver of immunity in the Tort Claims Act is not, and was not intended to be, complete. Arguments for applications of the Act that would essentially result in its waiver becoming absolute must therefore be rejected as contrary to the Act's fundamental purpose.

## B

■ With this thought in mind, we turn to the language of the Act, which, as respects this case, provides:

A governmental unit in the state is liable for:

\* \* \*

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE § 101.021(2). For guidance in applying this provision, the court of appeals looked to our decision in *Salcedo v. El Paso Hospital District,* 659 S.W.2d 30 (Tex.1983), while acknowledging that it has been criticized. 934 S.W.2d at 695 (citing *Texas Dept. of Mental Health & Mental Retardation v. Petty,* 848 S.W.2d 680, 687–689 (Tex.1992) (Cornyn, J., dissenting)). The decision in *Salcedo* is limited to its facts. *See University of Texas Medical Branch v. York,* 871 S.W.2d 175, 178 (Tex.1994) (noting that the waiver of immunity in *Salcedo* arose from the governmental unit's misuse of an electrocardiograph). Moreover, *Salcedo* does not support the court of appeals' conclusion in this case.

In the course of explaining the statutory provision just quoted, we stated in *Salcedo* that negligent conduct for which immunity from liability is waived "must involve 'some condition or some use' of tangible property". 659 S.W.2d at 33. The court of appeals in this case took our comment in *Salcedo* to mean that for immunity to be waived, "the property ... does not have to be the instrumentality of harm, it need only be involved." 934 S.W.2d at 695. In other words, the court concluded that some involvement of property is all that is required for immunity to be waived by Section 101.021(2). But we did not say in *Salcedo* that the involvement of property is *sufficient* for waiver of immunity, as the court of appeals concluded; we said only that the involvement of property is *necessary.*

The court of appeals' conclusion contravenes both the purpose and the language of the Act. Section 101.021(2) states that for immunity to be waived, personal injury or death must be proximately caused by a condition or use of tangible personal or real

property. The requirement of causation is more than mere involvement, although exactly how much more has been difficult for courts to define. If only involvement were required, the waiver of immunity would be virtually unlimited, since few injuries do not somehow involve tangible personal or real property. Requiring only that a condition or use of property be involved would conflict with the Act's basic purpose of waiving immunity only to a limited degree. *See Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 302–303 (Tex.1976) (Greenhill, C.J., concurring).

**C**

Section 101.021(2) requires that for immunity to be waived, personal injury or death must be proximately caused by the condition or use of tangible property. Plaintiffs here complain of both a use of property—Jones's unlocking the outer door without looking for Roger—and a condition of property—the unlocked inner door. Neither can be said to have caused Roger's suicide. Property does not cause injury if it does no more than furnish the condition that makes the injury possible. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex.1995). The unlocked doors permitted Roger's escape but did not cause his death. After fleeing Hillside, Roger ran half a mile and then attempted to hitchhike on both sides of a freeway. Only when he was about to be apprehended did he leap in front of an oncoming truck. Although Roger's escape through the unlocked doors was part of a sequence of events that ended in his suicide, the use and condition of the doors were too attenuated from Roger's death to be said to have caused it.

The court of appeals analogized this case to *Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528 (Tex.1975), where we held that immunity was waived by Section 101.021(2) for plaintiff's claim that he was injured when he fell out of his hospital bed because it was not equipped with side rails. There, however, plaintiff's injury was immediate and directly related to the absence of restraints on the side of the bed. Roger's death was distant geographically, temporally, and causally from the open doors at Hillside.

Plaintiffs also argue that this case is analogous to *Lowe* and to *Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169 (Tex. 1989). *Lowe* held that immunity was waived for a claim by a football player that his coach refused to allow him to wear a knee brace. 540 S.W.2d at 300. *Robinson* held that immunity was waived for a claim that a mentally handicapped young man was allowed to swim without a life preserver. 780 S.W.2d at 171. We have held that "[t]he precedential value of these cases is ... limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries." *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex.1996). The Hillside Center cannot be said to lack an integral safety component because its interior doors were unlocked in accordance with its open door policy.

The real substance of plaintiffs' complaint is that Roger's death was caused, not by the condition or use of property, but by the failure of Hillside's staff to restrain him once they learned he was still suicidal. The Tort Claims Act does not waive Dallas County MHMR's immunity from such a complaint.

**III**

The individual defendants contend that because plaintiffs' claim against their employer, Dallas County MHMR, is barred by governmental immunity, plaintiffs' claims against them are also barred by Section 101.106 of the Tort Claims Act, which states: "A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim." Plaintiffs initially argue that defendants cannot assert the bar of Section 101.106 until the Bossleys have obtained a judgment *against*, or settled with, Dallas County MHMR. But the immunity conveyed to a governmental unit's employees by Section 101.106 is triggered by *any* judgment in an action against a governmental unit, including a judgment in favor of the governmental unit. *Newman v. Obersteller*, 960 S.W.2d

621, 622 (Tex.1997). Since we have concluded that judgment must be rendered for Dallas County MHMR, judgment must also be rendered for its employees if Section 101.106 applies.

■ Plaintiffs also argue that Section 101.106 provides immunity only to Jones because she is the only Dallas County MHMR employee "whose act or omission gave rise to the claim." But plaintiffs read "claim" too narrowly. Their claim against Dallas County MHMR is not simply that one of its employees allowed Roger to escape; rather, they claim that the conduct of all the defendants caused Roger's death. A claimant cannot limit the immunity conveyed by Section 101.106 by singling out one employee's conduct on which to base liability of the governmental unit. All employees whose acts or omissions gave rise to the claim against the governmental unit are entitled to immunity, regardless of whether the claimant complains of their conduct.

■ Finally, plaintiffs argue that Section 101.106 does not apply because their action against the individual defendants does not "involve[ ] the same subject matter" as their action against Dallas County MHMR. The Federal Tort Claims Act contains a similar provision: "[t]he judgment in [a Federal Tort Claims Act] action ... shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. The phrase, "by reason of the same subject matter", has been defined to mean "arising out of the same actions, transactions, or occurrences." *Serra v. Pichardo,* 786 F.2d 237, 239 (6 th Cir.), *cert denied,* 479 U.S. 826, 107 S.Ct. 103, 93 L.Ed.2d 53 (1986); *see Engle v. Mecke,* 24 F.3d 133, 135 (10 th Cir. 1994). We think the similar phrase in Section 101.106 means the same thing, and the courts of appeals that have addressed the issue agree. *See White v. Annis,* 864 S.W.2d 127, 131 (Tex.App.—Dallas 1993, writ denied); *Bell v. Love,* 923 S.W.2d 229, 233 (Tex.App.—Houston [14 th Dist.] 1996, no writ). Clearly, plaintiffs' claims against Dallas County MHMR and the individual defendants all arise out of the same actions and occurrences.

We thus conclude that under Section 101.106 all of the individual defendants are immune from liability to plaintiffs.

\* \* \* \* \*

For the reasons we have explained, the judgment of the court of appeals is reversed and judgment is rendered that plaintiffs take nothing.

ABBOTT, J., issued a dissenting opinion, in which SPECTOR, J., joins.

ABBOTT, Justice, joined by SPECTOR, Justice, dissenting.

The Court concludes that "the use and condition of the doors were too attenuated from Roger's death to be said to have caused it." In doing so, the Court's analysis ignores the traditional proximate cause elements of cause in fact and foreseeability. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex. 1992). Instead, the Court focuses only on immediacy. Because I disagree with the standard applied by the Court and because application of the traditional standard compels a conclusion that a fact issue exists with regard to proximate cause, I dissent.

"Cause in fact" means the act or omission was a substantial factor in bringing about the injury and, without it, harm would not have occurred. *Travis,* 830 S.W.2d at 98. "Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the dangers his or her negligent act created for others. Foreseeability does not require that the person or entity who creates the dangerous situation anticipate the precise manner in which the injury occurs. *Id.* An intervening act of a third party will not excuse the first wrongdoer if such act should have been foreseen. *Northwest Mall, Inc. v. Lubri-Lon Int'l, Inc.,* 681 S.W.2d 797, 803 (Tex.App.—Houston [14 th Dist.] 1984, writ ref'd n.r.e.).

The summary judgment evidence raised a genuine issue of material fact on the foreseeability of Roger Bossley's suicide that included: (1) Bossley was being treated because he had attempted suicide; (2) he still exhibited

suicidal tendencies and threatened to kill himself upon his release from the facility; (3) the doctors decided he was of sufficient danger to himself that he should not be released and needed a more restricted environment; (4) Bossley knew that his transfer from Hillside was likely to result in his being committed to the state hospital; (5) he expressed fear of going to the state hospital; (6) on the morning of his suicide, the Dallas MHMR employees discussed the fact that Bossley had a great fear of going to the state hospital and he might elope to avoid being transferred; (7) MHMR's policy was to lock both front doors to keep inside any patient about to be transferred to a more restricted facility; (8) Angela Jones knew that the front door was supposed to be locked to prevent patients from "running out in the street" to harm themselves.

The summary judgment evidence also raised material fact issues concerning whether the use or condition of the doors was the cause in fact of Bossley's suicide: (1) Bossley was not constantly monitored; (2) Jones knew that because the inner (self-locking) door was opened, someone could run out the outer door when she opened it; (3) Jones opened the outer door without determining Bossley's location; and (4) Bossley escaped through the open door.

While it is true that the doors did not injure Bossley by actually physically striking him, that is not the test. The test is simply whether the doors were a proximate cause of Bossley's injury. Fact issues clearly exist concerning whether the use or condition of the doors was a substantial factor in bringing about Bossley's injury. Absent the use or condition of the doors, Bossley would still be in the hospital—he would have never escaped and would not have had the opportunity to jump in front of a truck.

The Court's claim that the suicide was too attenuated from the use or condition of the doors is weak, at best. It is not as if the suicide occurred later in the day or would not have occurred but for some intervening cause. As the Court notes, after Bossley escaped through the doors:

Hillside staff members chased Roger about half a mile to Interstate Highway 30, where he attempted to hitchhike a ride with passing motorists, first on one side of the freeway and then on the other. As Roger was approached by Hillside personnel and police who had by then joined in pursuit, he leaped into the path of a truck and was killed.

Before, during, and after Bossley burst through the doors, he seemed fixated on one end: suicide. As previously noted, Bossley was at the facility because he had attempted suicide; he still exhibited suicidal tendencies while at the facility; and he threatened to kill himself upon his release from the facility. When the use or condition of the doors provided Bossley the opportunity to act on his threats, he took it. In a fast-paced and continuous sequence, the suicide occurred directly and shortly after Bossley eloped through the doors. It seems that he killed himself with the first available instrumentality of death. Under these circumstances, a court cannot say—as a matter of law—that the use or condition of the doors was not a proximate cause of Bossley's death. At a minimum, a fact issue exists on proximate cause.

The non-doctor Petitioners claim that a finding of proximate cause in this case

[W]ould set a precedent leading to ridiculous results. For instance, claims would exist for Bossley's use of the roadways and the freeway to get to the location of the suicide; for the use of the floor of the facility, upon which Bossley and Ms. Jones walked; for the "use" of the phone, which helped to secret his escape; for use of the keys Ms. Jones "used" in the door; for the clothing Ms. Jones wore, which Bossley grabbed in an attempt to overpower her, among other [things].

The non-doctor Petitioners' concerns are unfounded. There is no evidence in the record that use of the roadway, the floor, the phone, the keys, or Ms. Jones's clothing was a foreseeable cause of injury to Bossley. Conversely, foreseeable injury resulting from the use or condition of the doors is almost established as a matter of law. The very reason the special doors existed was to prevent the high risk of elopement and potential

suicide. In contrast, the facility obviously did not contemplate using special floors, phones, etc., to deter elopement and suicide.

Also, the non-doctor Petitioners disingenuously argue that the use or condition of the Hillside doors could not be the proximate cause of Bossley's suicide because suicide is an intervening cause as a matter of law. *See* TEX. CIV. PRAC. & REM.CODE § 93.001(a)(2). The Petitioners omit the remaining portion of section 93.001(a)(2) which states that suicide shall not be an affirmative defense if the suicide was "caused in whole or in part by a failure on the part of any defendant to comply with an applicable legal standard." TEX. CIV. PRAC. & REM.CODE § 93.001(a)(2). As this Court made clear in *Kassen v. Hatley*, 887 S.W.2d 4 (Tex.1994), this section is no defense if the health care workers failed to comply with the standard of care, and their failure was a cause of the patient's suicide. *Id.* at 12. Summary judgment is improper because there is a genuine issue of material fact concerning whether the defendants complied with the applicable legal standard of care.