civil.case






NUMBER 13-00-425-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________

RAQUEL REYES MARTINEZ, INDIVIDUALLY AND AS REPRESENTATIVE OF 

THE ESTATE OF ROBERTO MARTINEZ REYES, Appellants,


v.

CITY OF BROWNSVILLE, Appellee.

___________________________________________________________________


On appeal from the 197th District Court of Cameron County, Texas.

___________________________________________________________________



OPINION

Before Chief Justice Valdez and Justices Dorsey and Rodriguez

Opinion by Chief Justice Valdez


Raquel Reyes Martinez brought suit against the City of Brownsville after her son, Roberto Martinez Reyes, committed
suicide by hanging himself with his clothing from his cell bars while in custody at the Brownsville City Jail. The City filed
a motion for summary judgment on both traditional and no-evidence grounds, specifically alleging that (1) there was no
evidence to show a waiver of sovereign immunity under the Texas Tort Claims Act, (2) appellant's claims were barred by
limitations, (3) appellant's claims were barred by sovereign immunity, and (4) appellant's claims were foreclosed by section
93.01(a)(2) of the Texas Civil Practice & Remedies Code, which bars certain actions where the plaintiff's conduct in
committing or attempting to commit suicide was the sole cause of the damages alleged. The trial court granted appellee's
motion for summary judgment without specifying the basis for its decision. We reverse and remand.

Procedural Background

The instant suit originated in the United States District Court for the Southern District of Texas, Brownsville Division. In
that court, Martinez brought claims against the City under 42 U.S.C. § 1983 and the Texas Tort Claims Act. After the
exchange of discovery, the City filed a motion for summary judgment as to all of Martinez's causes of action. The
magistrate's report recommended that the City's motion be granted regarding Martinez's federal claims, and that Martinez's
state law claims be dismissed without prejudice. According to the magistrate, "it appears the plaintiff may be able to
recover" under the Texas Tort Claims Act based on the act's statutory waiver of immunity for personal injury or death
caused by a condition or use of tangible personal or real property. The magistrate's report was adopted by the federal
district judge, and judgment was entered granting the summary judgment on Martinez's federal claims and declining to
exercise supplemental jurisdiction on her state claims, dismissing them without prejudice. 

During the pendency of the action in federal court, Martinez filed the underlying proceeding under the Texas Tort Claims
Act in state district court. 

Factual Background 

 On January 10, 1996, Reyes, a schizophrenic who was showing signs of erratic behavior, was arrested and charged with
intoxication by paint. He was determined to be "highly" intoxicated by aerosol paint and "to be a threat to himself and
others." He was booked into the Brownsville City Jail at 2:25 a.m. and was placed in a single cell. The jail staff was
familiar with Reyes due to his prior incarcerations, and admittedly knew that the decedent was at risk for suicide. In fact,
during some of Reyes's prior incarcerations, the jailers had transferred Reyes to Tropical Texas MHMR for treatment.

According to the jailers' testimony, the City had three options for incarcerating suicidal inmates. As one option, suicidal
inmates could be locked in the jail's padded cell, which was monitored "a lot" more closely than the other cells and which
did not contain "anything for them to kill themselves with." Alternatively, inmates prone to suicide could be locked in a
"general population" cell so that the other prisoners could "watch them while we're busy." As a final option, suicide-prone
inmates could be locked in a single cell. 

Inmates posing a known risk of suicide were to be kept "in close observation." All of the jail's cells were subject to varying
degrees of surveillance by camera and television monitoring. The padded cell could be seen in its entirety, except for its
ceiling, through its television monitor. In contrast, the cameras for the other cells monitored the jail cell's bars rather than
the whole cell. 

Although the jail's padded cell was available, the jailers placed Reyes in a single regular cell, rather than the padded cell or
in a communal cell with other prisoners. The jailers were admittedly aware that the jail cell bars on the single cells could
be used by suicidal inmates to hang themselves. According to Bryan Castro, one of the two detention officers on duty at
the time of Reyes' suicide, "Anybody could hang themselves anywhere on those bars." According to Eliborio Rios, the jail
administrator, "The cameras in the cell areas are mainly there so that we can see the bars, where most of the problems seem
to happen or where the problems would seem to happen, foreseeing something like this." 

Although the jail staff had received training and instruction that inmates could use items of clothing to hang themselves, the
staff failed to issue Reyes rip-away paper garments. When admitting prisoners who are a suicide risk, the jailers remove
the inmate's shoelaces and belt, and issue a blue paper suit to the inmate. According to Maria Garcia, the other detention
officer on duty at the time of the suicide, "If it comes down to take off their clothing, we go ahead and take off - remove
their clothing, give them blue suits." The blue paper garments were kept in the jail and were easily accessible to the jailers.
Nevertheless, the City incarcerated Reyes without replacing his own clothing with paper garments.

The following day, Reyes, showing clear signs of disturbed behavior, repeatedly asked the jail staff for his psychiatric
medication. At approximately 2:00 p.m., Ricardo Vargas, the decedent's case manager from Tropical Texas MHMR, called
the jail and notified the staff that he was bringing the decedent's psychiatric prescription medicines to the jail. He delivered
the medicines Haldol, Zoloft, Buspar, and Ativan at about 3:00 p.m., and told the staff that Reyes needed his medication,
and that it was important that he receive it. According to Vargas, Reyes was "apprehensive" and "scared" if he did not have
his medication, that "He was afraid he was going to get - something was going to happen to him." 

The jail staff did not administer the drugs to Reyes. At around 6:50 p.m., the jail staff found the decedent had hung himself
with his shirt from the bars on his cell door. Although Reyes's cell was subject to surveillance by camera and television
monitoring, the jail staff failed to see Reyes in the act of committing suicide. According to Castro and Garcia, the camera
monitoring Reyes's cell did not cover the area on the bars where Reyes hung himself. In fact, Garcia testified that she could
not see Reyes via monitor even after being told that he had hung himself. However, according to Rios, the camera covered
the area where Reyes hung himself, and according to his investigation, Castro and Garcia failed to see Reyes because "they
were busy doing other functions in the jail."

No Evidence Motion for Summary Judgment

The City based its motion for summary judgment on both traditional and no evidence grounds. See Tex. R. Civ. P. 166a(b),
(i). Specifically, the City argued that under Texas Rule of Civil Procedure 166a(i), there was no evidence to show a waiver
of sovereign immunity under the Texas Tort Claims Act. 

Under Texas Rule of Civil Procedure 166a(i), the City could only bring a no-evidence motion for summary judgment on a
claim or defense on which Martinez would have the burden of proof at trial. See Tex. R. Civ. P. 166a(i). Governmental
immunity is an affirmative defense on which the City would have had the burden of proof at trial. See Davis v. City of San
Antonio, 752 S.W.2d 518, 519-20 (Tex. 1988); Battin v. Samaniego, 23 S.W.3d 183, 185-86 (Tex. App.-El Paso 2000, pet.
denied). Therefore, to the extent that the trial court's summary judgment may have been based on the City's argument there
was no evidence to show a waiver of sovereign immunity under the Texas Tort Claims Act, it was error. 

Moreover, the City's argument that Martinez has "no evidence sufficient to show a waiver of sovereign immunity" - is
insufficient as a matter of law to raise any duty to respond under rule 166a(i) because this is nothing more than a prohibited
"conclusory" motion or "general" no-evidence challenge. Tex. R. Civ. P. 166a cmt. On its face, this rule 166a(i) challenge
fails to meet the requirement that "the motion must be specific in challenging the evidentiary support for an element of a
claim." Id.; see Michael v. Dyke, 41 S.W.3d 746, 751 n.3 (Tex. App.-Corpus Christi 2001, no pet.)(requiring strict
construction of no evidence motions for summary judgment). Accordingly, the City's no evidence motion did not meet the
requirements of rule 166a(i) and the trial court could not have appropriately granted summary judgment on that ground. 

Traditional Motion for Summary Judgment

Under the traditional standard for summary judgment, the City again argued that appellant's claims were barred by
sovereign immunity, and further argued that appellant's claims were barred by the statute of limitations and foreclosed by
section 93.01(a)(2) of the civil practice and remedies code. 

In a summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law. American Tobacco Co., v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). In deciding
whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be
taken as true. Id. Every reasonable inference must be indulged in favor of the nonmovant, and any doubts must be
resolved in favor of the nonmovant. Id. When a defendant moves for summary judgment on its affirmative defense, it
must prove each element of its defense as a matter of law, leaving no issues of material fact. Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991), see, e.g.,City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994)(official
immunity).

Because the trial court's order granting the City's motion for summary judgment does not specify the grounds for its ruling,
the summary judgment will be upheld if any of the theories advanced by the City are meritorious. See Bradley v.State, 990
S.W.2d 245, 247 (Tex. 1999); State Farm Fire & Cas. Co. v. S.S. & G.W., 858 S.W.2d 374, 380 (Tex. 1993). 

Statute of Limitations

According to the City's motion for summary judgment, Martinez's claims are barred by the applicable two-year statute of
limitations for personal injury or death. The incident made the basis of this lawsuit occurred on January 10, 1996. Martinez
originally brought suit in federal court on or about November 26, 1997. While this federal action was pending, Martinez
filed an action in state district court on October 8, 1999. The federal court action was dismissed on November 3, 1999,
with the federal court declining to exercise supplemental jurisdiction over Martinez's state law claims. 

Martinez contends that the statute of limitations was tolled by section 16.064 of the civil practice and remedies code. See
Tex. Civ. Prac. & Rem. Code Ann. § 16.064 (Vernon 1997). Section 16.064 provides:

(a) The period between the date of filing an action in a trial court and the date of a second filing of the same action in a
different court suspends the running of the applicable statute of limitations for the period if:

(1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment
is set aside or annulled in a direct proceeding; and 

(2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a
court of proper jurisdiction.

Tex. Civ. Prac. & Rem. Code Ann. § 16.064 (Vernon 1997). For purposes of the applicability of this section, a federal
court's refusal to exercise jurisdiction over a pendent state claim is tantamount to a dismissal for lack of jurisdiction. Vale
v. Ryan, 809 S.W.2d 324, 327 (Tex. App.--Austin 1991, no writ). Therefore, under the statute, appellant's suit was tolled
from November 26, 1997, the date that she originally filed suit in federal court, until October 8, 1999, the date that she filed
suit in state district court. We conclude that Martinez's suit was not barred by limitations, thus, the City's motion for
summary judgment would not have been appropriately granted on this ground.

Affirmative Defense of Suicide

The City next contends that summary judgment was proper under section 93.001 of the Texas Civil Practice and Remedies
Code. See Tex. Civ. Prac. & Rem. Code Ann. § 93.001 (Vernon Supp. 2001). (1) This section of the code provides that:

(a) It is an affirmative defense to a civil action for damages for personal injury or death that the plaintiff, at the time the
cause of action arose, was:

***

(2) committing or attempting to commit suicide, and the plaintiff's conduct in committing or attempting to commit suicide
was the sole cause of the damages sustained; provided, however, if the suicide or attempted suicide was caused in whole or
in part by a failure on the part of any defendant to comply with an applicable legal standard, then such suicide or attempted
suicide shall not be a defense.

***

(c) In an action to which this section applies, this section shall prevail over any other law.

Tex. Civ. Prac. & Rem. Code Ann. § 93.001 (Vernon Supp. 2001). The City had no defense under this section if it failed to
comply with the applicable standard of care, and this failure was a cause of Reyes's suicide. Id.; see Kassen v. Hatley, 887
S.W.2d 4, 13 (Tex. 1994). The jailers admitted that they had specific duties and responsibilities to inmates who posed a risk
of suicide. Martinez has presented uncontradicted evidence that the jailers knew that Reyes was a suicide risk, and knew
that suicidal inmates could use their clothing to hang themselves from the bars of their jail cells. Reyes in fact hung
himself with his clothing from the bars of his cell. The jailers failed to place Reyes in a padded cell, failed to issue
suicide-proof clothing, failed to monitor him, and failed to institute the jail's procedures to ensure Reyes received his
medication. This evidence raises a genuine issue of material fact on whether the City met the applicable legal standard of
care. Therefore, summary judgment on this ground would be improper. Kassen, 887 S.W.2d at 13 (citing Evans v. City of
Marlin, 986 F.2d 104, 109 (5th Cir. 1993)).

Sovereign Immunity

 The City also argued that Martinez's claims were barred by sovereign immunity. A governmental unit is immune from
tort liability unless the legislature has waived immunity. See Harris County v. Dillard, 883 S.W.2d 166, 168 (Tex. 1994).
Exceptions to sovereign immunity are generally dependent entirely upon statute. See Dallas County MHMR v. Bossley, 968
S.W.2d 339, 341 (Tex. 1998). Section 101.021(2) of the Texas Civil Practice and Remedies Code provides a limited
waiver of sovereign immunity: a governmental unit in the state is liable for personal injury and death caused by a condition
or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the
claimant according to Texas law. See Tex. Civ. Prac. & Rem. Code Ann. §101.021(2) (Vernon 1997). 

To state an actionable complaint under the act, the personal injury or death must be proximately caused by the condition or
use of tangible property. Dallas County MHMR, 968 S.W.2d at 341-42. "Property does not cause injury if it does no more
than furnish the condition that makes the injury possible." Id. at 343 (citing Union Pump Co. v. Allbritton, 898 S.W.2d
773, 775 (Tex. 1995)).

Under section 101.021(2), the State can waive immunity if it provides property that lacks an integral safety component, and
the lack of this integral component led to plaintiff's injuries. Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 585 (Tex.
1996); see, e.g., Robinson v. Central Texas MHMR Ctr., 780 S.W.2d 169, 171 (Tex. 1989)(state liable for employee's
provision of swimming attire that did not include life preserver); Lowe v. Texas Tech. Univ, 540 S.W.2d 297, 300 (Tex.
1976)(university liable for providing uniform without knee pad to football player); Overton Mem'l Hosp. v. McGuire, 518
S.W.2d 528, 529 (Tex. 1975)(hospital liable for providing hospital bed without side rails); Texas Dept. of MHMR v.
McClain, 947 S.W.2d 694, 697 (Tex. App.-Austin 1997, writ denied)(department liable for providing lockers with
removable metal rods and wheelchairs with removable pedals). 

However, the Tort Claims Act and case law have distinguished claims involving the failure to use property, which do not
waive sovereign immunity, from claims involving a condition or use of tangible personal property that causes injury, which
do effect a waiver. Texas Dep't of Criminal Justice v. Miller, 44 Tex. Sup. Ct. J. 963, ___, 2001 Tex. LEXIS 66, *9 (June
21, 2001). "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." Texas Natural
Res. & Conservation Comm'n v. White, 46 S.W.3d 864, 869 (Tex. 2001). Use of the property must have actually caused
injury. Miller, 2001 Tex. LEXIS *11 (misuse of medication masked symptoms of meningitis but did not cause death). 

Under the Tort Claims Act, if a claim arises from a "premise defect," the governmental unit owes to the claimant only the
duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises. Tex.
Civ. Prac. & Rem. Code Ann. §101.022 (a) (Vernon 1997); see Tex. Dept. of Transp. v. Able, 35 S.W.2d 608, 612 (Tex.
2000). That duty requires that a landowner not injure a licensee by willful, wanton or grossly neglectful conduct. State
Dept. of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992) (op. on reh'g). Absent allegations of
willful, wanton, or grossly negligent conduct, a licensee must prove that (1) a condition of the premises created an
unreasonable risk of harm to the licensee, (2) the owner actually knew of the condition, (3) the licensee did not know of the
condition, (4) the owner failed to exercise ordinary care to protect the licensee from danger, and (5) the owner's failure was
a proximate cause of injury to the licensee. Id.

In its motion for summary judgment, the City makes three arguments that Martinez's claims are barred by sovereign
immunity. (2) First, the City argues that the negligent use of government property by someone other than a government
employee does not give rise to a waiver of immunity under the Tort Claims Act, and that Reyes's death was caused by
Reyes's use of the cell door rather than a City employee's use of the cell door. Second, the City argues that because the cell
door is an appurtenance of a premises, Martinez's claim is for a premises defect, and is thus exclusively governed by
section 101.022 of the Texas Civil Practice & Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. §101.022 (Vernon
1997). Third, the City argues that Martinez cannot recover for the City's negligent formulation of policy.

In response, Martinez alleged that (1) Reyes's death was caused by a condition or use of tangible personal or real property,
(2) the City provided property lacking an integral safety component and the lack of the component led to Reyes's death, and
(3) Reyes's death was caused by the negligent implementation of formulated policy.

Use of Tangible Property

We first address the City's argument that Reyes's suicide was caused by Reyes's use of the cell door rather than a City
employee's use of tangible real or personal property. According to the City, the "only use any City employee arguably made
of the cell door in question was to close Plaintiff in a cell behind it: such does not constitute a negligent use of the cell door,
as that is exactly what a cell door is supposed to be used for." Citing LeLeaux v. Hamshire-Fannett Ind. Sch. Dist., 835
S.W.2d 49 (Tex. 1992), the City thus argues that the negligent use of government property by someone other than a
government employee does not give rise to a waiver of immunity under the Tort Claims Act,. 

Contrary to the City's argument, Martinez's pleadings and response allege that the City misused tangible property. More
specifically, Martinez alleges that, contrary to its own policies, the City furnished Reyes a regular cell without furnishing
him the rip away garments necessary to render Reyes's use of the cell safe. Martinez's response to the City's motion for
summary judgment specifically provides that:

The cell door at the Brownsville City Jail was directly used in [Reyes's] suicide and thus proximately caused his death. The
jailers had received on the job training as to what articles of clothing inmates could use to hang themselves using the
tangible property of the cell door in jails and as such, the jailers were under instructions to issue blue paper garments to
inmates that might be suicidal. 

The summary judgment evidence adduced by Martinez substantiates these allegations. Moreover, many of the acts giving
rise to liability under the Tort Claims Act involve some nexus between the injured party's "use" of the tangible property and
the governmental employee's use of the property. This nexus appears in the context of property lacking a safety
component, for example, as when a patient uses a bed without side rails, see, e.g., Overton Mem'l Hosp., 518 S.W.2d 528,
or a football player uses a uniform without a kneepad, see, e.g., Lowe, 540 S.W.2d at 300. 

Finally, even if we were to focus solely on Martinez's allegations concerning the jail cell, in isolation, without considering
the jail's failure to furnish paper garments, this Court has held that governmental employees can "use" a room for purposes
of the Tort Claims Act. See Vela v. City of McAllen, 894 S.W.2d 836, 840 (Tex. App.-Corpus Christi 1995, no
writ)(officer's negligent use of booking room at jail caused injury to epileptic inmate); see also Waco v. Hester, 805 S.W.2d
807, 814-15 (Tex. App.-Waco 1990, writ denied)(jail's failure to segregate inmate contrary to policy caused injury to
another); but see Laman v. Big Spring State Hosp., 970 S.W.2d 670, 671-72 (Tex. App.-Eastland 1998, pet. denied)(claims
concerning use of a room alleged premises defect). 

We must also reject the City's argument that the instant case is analogous to Dallas County MHMR v. Bossley, 968 S.W.2d
339 (Tex. 1998). In Bossley, a mental patient who had previously attempted to take his own life escaped from a county
mental health facility through an unlocked door. During the subsequent pursuit by employees of the facility and the police,
the patient leaped into the path of a truck and was killed. The patient's family brought suit against the facility alleging that
their son's death was caused by an employee of the facility unlocking the outer door of the facility without first ensuring
that the inner doors were locked. The family therefore claimed that their son's death came within the statutory waiver of
immunity under section 101.021(2) of the Tort Claims Act as a "use or condition" of tangible property.

 The court of appeals agreed with the patient's family, but the Texas Supreme Court reversed the intermediate court on
grounds that causation requires more than the mere involvement of tangible personal or real property. Id. at 343.
According to the supreme court, property does not cause injury if it does no more than furnish the condition that makes the
injury possible. Id. Although the patient's escape through the unlocked doors was part of a sequence of events that ended
in his suicide, the use and condition of the doors were too distant geographically, temporally, and causally from the patient's
death to have caused the death. Id. Furthermore, the court pointed out that the real substance of the plaintiffs' complaint
was that the patient's death was caused not by the condition or use of property, but by the failure of the county mental
hospital staff to restrain the patient once they learned he was suicidal. Id.

Bossley is distinguishable from the instant case on several grounds. As an initial matter, Martinez's pleadings and evidence
concern the City's provision of property lacking a safety component and the City's negligent implementation of policy;
neither argument was made in Bossley. Not only did the staff fail to restrain Reyes from committing suicide, but by placing
Reyes in a regular cell with his clothing, the staff actually furnished the means for him to commit suicide. Further,
causation in the instant case is direct: the decedent hung himself on his jail door, thus providing a close causal nexus both
geographically and temporally. In fact, the City's own motion for summary judgment recites that "it was Plaintiff's use of
his shirt and of the cell door that proximately caused his injuries." 

Characterization of Claims

Second, the City argues that because the cell door is an appurtenance of a premises, Reyes's claim is in the nature of a
premises defect, and is thus exclusively governed by section 101.022 of the Tort Claims Act concerning premises liability
claims. According to the City, Martinez neither pleaded nor proved that (1) a condition of the premises created an
unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not know of the
condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; (5) the owner's failure was a
proximate cause of injury to the licensee. See Payne, 838 S.W.2d at 237. The City notes that these "elements of proof
were not pleaded in any form, perhaps because they make absolutely no sense in the context of Plaintiff's allegations." 

As an initial matter, we disagree with the City's position that Martinez has failed to plead a cause of action for premises
liability. A licensee need only prove the foregoing allegations absent allegations of wilful, wanton, or grossly negligent
conduct, and Martinez has clearly pleaded wilful, wanton, and grossly negligent conduct on the part of the City. See id.
Moreover, the testimony discussed above represents more than a scintilla of evidence supporting these claims. Thus, even
if we were to construe Martinez's claims as sounding in premises liability, Martinez has established a waiver of immunity
under section 101.022, and the motion for summary judgment was improvidently granted.

However, more fundamentally, we disagree with the City's characterization of this action as a premises liability claim under
section 101.022. In a premises defect case, liability is based on the duty of care owed by the governmental unit to the
claimant for premise and special defects under section 101.022. Texas Dept. of Transp. v. Able, 35 S.W.3d 608, 612 (Tex.
2000); DeWitt v. Harris County, 904 S.W.2d 650, 653 (Tex. 1995). In contrast, for a claim under section 101.021, liability
is based on the actions of the governmental unit's employees. See Able, 35 S.W.3d at 612. In the instant case, Martinez's
allegations are based on the actions of the jail's employees in furnishing Reyes a cell without padding and without paper
garments and in failing to follow its own policies regarding the treatment of suicidal inmates. Martinez alleges that the use
or condition of a jail cell with bars instead of a padded cell when used in conjunction with the lack of anti-suicide clothing
was a substantial factor in bringing about Reyes's death. Martinez's claim does not merely relate to the bars on the jail cell,
nor is her complaint that the jail cell was defective in some manner as would be the case were this a premises defect claim.
Cf. Laman, 970 S.W.2d at 627 (no cause of action for premises defect where no defect, shortcoming, or imperfection in
room or door)(citing Billstrom v. Memorial Med. Ctr., 598 S.W.2d 642, 646 (Tex. Civ. App. -Corpus Christi 1980, no
writ). Rather, Martinez's complaint is that, contrary to jail policy and procedure, Reyes was furnished a cell without being
issued the paper garments necessary to make his use of the cell safe. 

This case can most clearly be understood in relation to Robinson v. Cent. Texas MHMR Ctr., 780 S.W.2d 169 (Tex. 1989).
In Robinson, the State was held liable for the drowning death of a state school patient when it provided the patient with
swimming attire that did not include a life preserver, and the patient drowned. The MHMR employees knew that the
patient suffered from epilepsy that occasionally caused him to lose consciousness. Although the employees had life
preservers available, they failed to issue one to the patient. According to the Texas Supreme Court, the MHMR employees
were responsible for seeing that those for whom they cared were dressed in proper swimming attire, and a life preserver
was part of the patient's swimming attire. Id. at 171. 

Similarly, in the instant case, the jailers were responsible for placement of suicide risks in particular cells, and were
responsible for ensuring that the clothing worn by suicide risks was safe. The jailers removed belts and shoelaces, and
issued blue paper suits. The jailers knew that Martinez was a suicide risk, and knew, on the day of the incident, that he was
agitated and asking for his medication. They knew that the jail bars on regular cells could be used by suicide risks to hang
themselves, and they knew that inmates could use their clothing to hang themselves. They had the option of placing
Martinez in a padded cell or issuing him paper tear away garments, yet failed to do either. Martinez in fact hung himself
from the jail bars by his clothing. Although we concur with other courts that the distinction between non-use and the
failure to provide something with safety components is difficult to draw, we conclude that the instant case implicates more
than the mere non-use of the paper garments. See Miller, 2000 Tex. LEXIS at *14 (Hecht, J. concurring)(discussing
difficulty of applying "use" of property standard under the Tort Claims Act).

Formulation or Implementation of Policy

 Third, the City argues that the decedent's death was caused by the negligent formulation of policy. With regard to
governmental liability for policy decisions, sovereign immunity is preserved for the negligent formulation of policy, but
waived for the negligent implementation of policy. City of Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex.
1995);State v. Terrell, 588 S.W.2d 784, 787-88 (Tex. 1979); see City of San Augustine v. Parrish, 10 S.W.3d 734 (Tex.
App.-Tyler 1999, pet. dism'd w.o.j.)(negligent implementation of governmental policy in undertaking training, but failing to
adequately train and supervise); City of Waco v. Hester, 805 S.W.2d 807, 812-13 (Tex. App.-Waco 1990, writ
denied)(failing to follow city policy regarding segregation of certain inmates related to policy implementation by
jailers);Forbus v. City of Denton, 595 S.W.2d 621, 623 (Tex. Civ. App.-Fort Worth 1980, writ ref'd n.r.e.)(deciding type of
mattress to provide to prisoners related to policy implementation). We agree with the City that, to the extent that
Martinez's claims relate to the formulation of policy rather than the implementation of policy, her claims must fail. Second,
to the extent that she is generally claiming that the City failed to furnish proper training and instruction to its employees,
this claim will also fail. See Texas Dept. of Public Safety v. Petta, 44 S.W.3d 575, 580 (Tex. 2001)(negligent training
claim did not involve requisite tangible personal property). 

However, plaintiff's petition and response clearly raise fact issues regarding the City's negligent implementation of policy
regarding the use or misuse of tangible property. As discussed above, the jailers failed to follow the jail's policy regarding
the provision of paper garments to Reyes. 

Moreover, the jailers had a policy of closely monitoring suicidal inmates. We agree that under many circumstances the
jailers' failure to monitor could be considered a discretionary function and therefore not actionable under the Tort Claims
Act. See e.g., City of Coppell v. Waltman, 997 S.W.2d 633, 637 (Tex. App.-Dallas 1998, no pet.). In this case, however,
the conflicting deposition testimony raises the issue that the physical focus of the camera covering Reyes's cell was
deficient. As noted previously, Castro and Garcia testified that the camera monitoring Reyes's cell did not cover the area
on the bars where he hung himself. Garcia even testified that she could not see Reyes via monitor even after being told that
he had hung himself. However, according to Rios, the camera covered the area where Reyes hung himself, and according
to his investigation, Castro and Garcia failed to see Reyes because "they were busy doing other functions in the jail." 

Further, Martinez's petition and response show that the jailers failed to follow their own policy regarding the provision of
medicine to Reyes. With regard to the provision of medications, the law is clear that the failure to provide medication or
the failure to provide appropriate medication is not actionable under the tort claims act. See Kerrville State Hosp. v. Clark,
923 S.W.2d 582, 585 (Tex. 1996)(failure to provide specific form of medication not actionable); Kassen v. Hatley, 887
S.W.2d 4, 14 (Tex. 1994)(failure to provide medication constituted nonuse). However, Martinez's petition recites that:

The City of Brownsville, Texas, knew decedent Roberto Martinez Reyes as having psychiatric problems which required
prescription medicine for control. While in the custody of the City of Brownsville, Roberto Martinez Reyes exhibited
obvious signs and behavior of mental illness. During Roberto Martinez Reyes' incarceration the City of Brownsville not
only failed to provide Roberto Martinez Reyes with his required medication, but also refused to administer the requisite
medication when it was brought to the jail for Roberto Martinez Reyes. As a result of such acts, Roberto Martinez Reyes
died while in the custody of the City of Brownsville . . . .

In addition, the petition argues that the City was negligent in failing to "implement and/or use proper procedures for a
referral to mental health and/or medical personnel." Maria Garcia testified regarding the jail's procedures in administering
medication to inmates. Before medication can be dispensed to an inmate, the jailers call an officer to transport the inmate
to the hospital for review and approval of administration of the medication. 

In this case, the record evidence shows that the jailers were aware that Martinez required medication from their experience
with him during his prior incarcerations, and were similarly aware that Martinez posed a risk of suicide. Castro was aware
that Martinez had been asking for his medication since the evening before he began his shift at approximately 2:30 p.m.
Martinez continued to repeatedly asked the jailers for his medication during the day, and showed obvious signs of erratic
behavior. Vargas sais that Martinez was apprehensive and scared if he didn't have his medication, and that he was afraid
something was going to happen to him. Vargas testified that he delivered the medication at approximately 3:00 p.m. that
day, and told the jailers that it was important for Martinez to take the medication. Nevertheless, the undisputed evidence
shows that the jailers failed to institute the jail's procedure to enable Martinez to take his medication because they were too
busy with other duties.

Conclusion

 In order for the City to be entitled to summary judgment, it must have established the affirmative defense of sovereign
immunity as a matter of law. Amer. Tobacco, 951 S.W.2d at 425. In order to determine if the trial court erred in granting
the City's motion for summary judgment, we must consider the summary judgment evidence in the light most favorable to
Martinez, indulging all reasonable inferences in her favor. See id. We must further bear in mind that summary judgment
was intended to be a procedure to allow summary dismissal of "patently unmeritorious claims or untenable defenses." See
Gulbenkian v. Penn, 252 S.W.2d 929, 931 (Tex. 1952). After reviewing the summary judgment evidence, we cannot
conclude that this is such a case. A governmental unit in the state is liable for personal injury and death caused by a
condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to
the claimant according to Texas law. See Tex. Civ. Prac. & Rem. Code Ann. §101.021(2) (Vernon 1997). Considering the
summary judgment evidence in the light most favorable to Martinez and indulging all reasonable inferences in her favor,
Martinez produced evidence that Reyes's death was proximately caused by the City's use of tangible property. The City
furnished Reyes property lacking an integral safety component, and the lack of the safety component resulted in Reyes's
death. Specifically, the City utilized a regular cell to incarcerate Reyes, a known suicide risk, without replacing his
clothing with paper garments. The City did so despite full awareness that Reyes could hang himself on the cell's bars with
his clothes. Under the facts of this case, a barred cell could not be used to safely incarcerate Reyes without paper garments.
Further, as discussed herein, Martinez produced evidence that the City negligently failed to implement its policies regarding
the use of tangible property, specifically, the provision of paper garments to inmates posing a risk of suicide, the use of
cameras and monitors to observe suicidal prisoners, and the procedures for dispensing medicines to inmates. In conclusion,
the City failed to establish that Martinez's suit was barred by sovereign immunity as a matter of law, and summary
judgment would be improperly granted on this ground.

We have examined each of the theories underlying the City's motion for summary judgment, and have found that none of
the theories advanced by the City are meritorious. See Bradley, 990 S.W.2d at 247. Accordingly, the summary judgment
in favor of the City is reversed and the cause remanded for further proceedings consistent with this opinion.


 

ROGELIO VALDEZ

Chief Justice



Do not publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed this 

the 31st day of August, 2001. 

1. This section of the Texas Civil Practice and Remedies Code was amended in 1997; however, the changes were not
substantive, therefore all references herein are to the current version of this provision. See Tex. Civ. Prac. & Rem. Code
Ann. § 93.001 (Vernon Supp. 2001)

2. On appeal, the City raises additional grounds for summary judgment; however, a motion for summary judgment must
expressly present the grounds upon which it is made, and it must stand or fall on these grounds alone. See Tex. R. Civ. P.
166a(c); Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997); McConnell v. Southside Indep. Sch. Dist., 858
S.W.2d 337, 341 (Tex. 1983); see also Tex. R. Civ. P. 166a(i) cmt.