# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00439-CV

**The City of Austin, Appellant**

**v.**

**Amy-Marie Howard, Individually and as Next Friend of D. A., a Minor, and as a Representative of The Estate of Johnathon Aguilar, and on Behalf of All Those Entitled to Recover Under the Texas Wrongful Death Act For The Death of Johnathon Aguilar and Nanette Mojica, Individually, Appellees**

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-007467, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The City of Austin appeals from the trial court's denial of its plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(8). This suit arises from the tragic death of Johnathan Aguilar at the hands of Dylan Woodburn, who stabbed and killed Aguilar minutes after fleeing impending restraint by a City police officer. Appellees[1] sued the City, and other parties not before us on appeal, to recover damages for Aguilar's death. For the following reasons, we reverse the trial court's order and render judgment granting the City's plea to the jurisdiction and dismissing appellees' claims against the City.

---

[1] Appellees are Amy-Marie Howard, in her capacities as Aguilar's wife, next friend for the couple's minor child, and representative of Aguilar's estate; and Aguilar's mother, Nanette Mojica.

## BACKGROUND

Seeking to recover damages for the death of Aguilar, appellees filed suit against the City, the restaurant where Aguilar was killed, and the manufacturer and seller of the duty belt worn by the police officer involved in the incident.[2] The following narrative derives from the factual allegations in appellees' original petition.[3]

The morning of January 3, 2020, Austin Police Department (APD) received a "suspicious person" call related to a man—later determined to be Woodburn—inside Bennu Coffee disturbing customers, holding a large rock, and threatening customers. After the call to the police, Woodburn attacked a Bennu customer with a large object and was eventually wrestled to the ground and restrained by multiple Bennu customers. Officer Patrick Spradlin was the first APD officer to respond to the call and entered Bennu, approached Woodburn, and directed the Bennu customers restraining Woodburn to release him. The customers complied with Officer Spradlin's order.

Officer Spradlin attempted to restrain Woodburn by placing him into handcuffs. However, during the exchange, Officer Spradlin's duty belt came loose, and the officer put his handcuffs down and, with both hands, attempted to resecure his duty belt. While Officer Spradlin attempted to resecure his duty belt, Woodburn stood up and left the coffee shop. Upon exiting Bennu, Woodburn entered an adjacent restaurant (Freebirds) through a door that its

---

[2] For reasons unexplained in the record, appellees did not file suit against Woodburn.

[3] In their response to the City's plea to the jurisdiction, appellees represented that they would be filing an amended petition containing further factual allegations gleaned from recent documents produced by the City, including the results of an internal investigation of the incident. Their response cited some of the further details. However, the record contains no amended petition, and we therefore cite the factual allegations contained in appellees' live (original) petition.

general manager, Ryan Bramlett, had left unlocked, despite earlier noticing Woodburn acting strangely and erratically while peering through the restaurant's door. Bramlett had initially locked the door behind him when he first arrived at work at 7:50 a.m. to help Freebirds employee Aguilar prepare the business for the day but, shortly thereafter, Bramlett unlocked the door to allow a knife-sharpening vendor access to the business. The knife vendor placed the freshly sharpened knives on the counter and was accompanied to the door by Bramlett, who did not lock the door after the vendor left. Moments later Woodburn entered through the unlocked door, picked up a knife from the counter, and stabbed Aguilar multiple times. Aguilar died from the stab wounds.

A few days after the incident, APD chief Brian Manley stated that an officer's duty belt coming loose "is something that we do not expect to have happened. We expect to provide our officers with the best equipment, and we expect our equipment to perform appropriately." Appellees allege that the failure of Officer Spradlin's duty belt to have "keepers"[4] or other "integral safety components," the duty belt's failure to comply with APD policy, and the duty belt's use or misuse proximately caused Aguilar's death.

## DISCUSSION

The City, as a political subdivision of the State, is immune from suit and liability unless the State consents. *See City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014). Governmental immunity defeats a court's jurisdiction. *Dallas Area Rapid Transit v. Whitley*,

---

[4] Appellees allege that "keepers" are "safety devices intended to prevent gun belts from failing (falling off) at critical moments." Wikipedia explains that keepers "wrap around the duty belt and trouser belt, ensuring that the belt stays in place, even when the officer is taking something from the belt or engaging in an altercation with a suspect." *Police Duty Belt*, *Wikipedia*, https://en.wikipedia.org/wiki/Police_duty_belt (last visited Jan. 31, 2023).

104 S.W.3d 540, 542 (Tex. 2003). Where a government entity challenges jurisdiction on the basis of immunity, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015). To determine if the plaintiff has met that burden, we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties. *Whitley*, 104 S.W.3d at 542. When a plea to the jurisdiction challenges the sufficiency of the claimant's pleadings, as here, we determine whether the pleadings contain enough facts to demonstrate jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

The asserted source of waiver in this case is the Texas Tort Claims Act (TTCA), which waives governmental immunity in a limited number of circumstances including, relevant here, "personal injury and death so caused by a condition or use of tangible personal or real property." *See* Tex. Civ. Prac. & Rem. Code § 101.021. That is, the plaintiff must show that personal injury or death was "proximately caused by the condition or use of tangible property" at issue. *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998).

4

Proximate cause, in turn, requires both cause in fact and foreseeability. *Ryder*, 453 S.W.3d at 929. For a condition or use of property to be a cause in fact, the condition or use must "serve as a substantial factor in causing the injury and without which the injury would not have occurred." *Id.* Further, the condition or use "must have actually caused the injury." *City of Dallas v. Sanchez*, 494 S.W.3d 722, 726 (Tex. 2016) (per curiam) (quoting *Dallas County v. Posey*, 290 S.W.3d 869, 872 (Tex. 2009)). Causation is lacking if the tangible property "does no more than furnish the condition that makes the injury possible," *Bossley*, 968 S.W. 2d at 343, and the use of property that "simply hinders or delays treatment . . . does not constitute a proximate cause of an injury," *Sanchez*, 494 S.W.3d at 726. To constitute cause in fact, the alleged negligent act or omission must "justify the conclusion that [the] injury was the natural and probable result thereof." *Doe v. Boys Club of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (citations omitted).

Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Id.* The danger of injury is foreseeable if its "general character might reasonably have been anticipated . . . and the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." *Ryder*, 453 S.W.3d at 929. The question of foreseeability, and proximate cause generally, involves a practical inquiry based on "common experience applied to human conduct." *Doe*, 907 S.W.2d at 477. It asks whether the injury "might reasonably have been contemplated" as a result of the defendant's conduct, *id.*, or—by extension to claims under the TTCA—as a result of the condition or use of tangible property, *see* Tex. Civ. Prac. & Rem. Code § 101.021. Proximate cause is generally a question for the factfinder unless reasonable minds could not differ about whether it exists, and thus we must

5

determine whether the pleaded facts, taken as true, create a fact question regarding the causal relationship between the condition or use of property and the injury or death. *See Ryder*, 453 S.W.3d at 927, 929 (noting that we review trial court's ruling on plea to jurisdiction de novo).

Viewing the facts alleged in favor of appellees, as we must, we conclude that there is no fact question on either foreseeability[5] or cause in fact. Aguilar's death cannot be said to have been the natural and probable result of the duty belt's failure to stay put, and it was not reasonably foreseeable that the belt's failure might cause the kind of harm that Aguilar suffered. *See Ryder*, 453 S.W.3d at 929; *Doe*, 907 S.W.2d at 477. Instead, Aguilar's death was preceded by an alleged extraordinary sequence of events too causally attenuated from the alleged use or condition of the duty belt to demonstrate anything more than the duty belt's mere furnishing of a condition that made Aguilar's death possible: on January 3, 2020, Officer Spradlin's duty belt either lacked an "integral safety component" such as keepers or was not in compliance with APD policy when the officer wore it to respond to a report of a man threatening Bennu customers with a weapon. Officer Spradlin arrived on the scene and entered the coffee shop. He ordered the customers who had wrestled Woodburn to the floor and were holding him down to release him. Officer Spradlin began handcuffing Woodburn but ceased doing so when his duty belt came loose, instead attempting to resecure his duty belt. Woodburn exited the coffee shop and entered the adjacent Freebirds through an unlocked door before regular business hours, picked up from

---

[5] Although in its brief the City focuses on the cause-in-fact prong of proximate cause, we nonetheless may review whether the alleged facts create a fact issue on the foreseeability prong because that subsidiary question is fairly included within the City's issue statement, "Was Mr. Aguilar's death proximately caused by a condition or use of the police officer's duty belt?" *See City of Austin v. Anam*, 623 S.W.3d 15, 19 (Tex. App.—Austin 2020, no pet.). Furthermore, jurisdictional issues relating to sovereign immunity may be raised by a court sua sponte. *See id.*

6

a counter a recently deposited and newly sharpened knife, and repeatedly stabbed to death Freebirds employee Aguilar.

Even assuming that the duty belt lacked an "integral safety component" or was not in compliance with APD policy, the cases appellees cite involving tangible personal property that lacked integral safety components are distinguishable because the injuries therein were the reasonably foreseeable and direct consequence of the failure to use or provide such safety components. *See, e.g.*, *Robinson v. Central Tex. MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex. 1989) (plaintiff known to have epilepsy drowned after mental health center allowed him to swim without life preserver); *Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528, 529 (Tex. 1975) (plaintiff injured from falling out of hospital bed that lacked bed rails); *see also Michael v. Travis Cnty. Hous. Auth.*, 995 S.W.2d 909, (Tex. App.—Austin 1999, no pet.) (passerby injured by pit bulls that escaped through hole in fence). The same cannot be said for the facts alleged here.

Although the determination of proximate cause is necessarily fact specific, we believe that the facts alleged here are analogous to the cases cited by the City, wherein this Court and others have determined that when injuries are too attenuated—either temporally, physically, or causally—from the alleged condition or use of tangible personal property, the property's condition or use is not the proximate cause as a matter of law. *See, e.g.*, *Sanchez*, 494 S.W.3d at 727 (malfunctioning 911 system that contributed to misidentified apartment number was not proximate cause of overdose death); *Bossley*, 968 S.W. 2d at 343 (unlocked door at mental health center was not proximate cause of escaped patient's suicide by stepping in front of truck on freeway half mile away); *City of Austin v. Anam*, 623 S.W.3d 15, 19 (Tex. App.—Austin 2020, no pet.) (officer's failure to fasten seatbelt on handcuffed suspect in vehicle was not proximate

7

cause of suspect's shooting himself with gun in his possession); *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 412 (Tex. App.—Fort Worth 2006, pet. denied) (improper application of handcuffs and leg restraints on suspect being transported in police vehicle was not proximate cause of his kicking out car's window and throwing himself through window and onto highway).

The real substance of appellees' complaint is that Aguilar's death was caused not by the condition or use of the duty belt but by Officer Spradlin's decision to resecure the belt instead of continuing to handcuff Woodburn or otherwise attempt to apprehend him. In our recent *Anam* case, this Court determined that there was no proximate cause under alleged facts with analogous causal attenuation. *See Anam*, 623 S.W.3d at 15. In that case, the plaintiffs alleged that a police officer was negligent in failing to refasten the seatbelt of an arrestee after discovering that his seatbelt had come undone. *See id.* at 17. Having undone his seatbelt, the arrestee was able to—and did—access a handgun in his waistband and use it to kill himself. *See id.* This Court determined that the plaintiffs had not alleged any facts demonstrating foreseeability—"i.e., that a person of ordinary intelligence should have anticipated that the failure to refasten the seatbelt of a handcuffed occupant of the vehicle would create the danger of suicide by gunshot." *Id.* at 19. Instead, their pleadings asserted "in a conclusory manner" only that it was foreseeable that failing to use the seatbelt properly would cause injury to the arrestee. *Id.* Furthermore, this Court concluded that the plaintiffs *could not* allege any facts demonstrating foreseeability because the "reasonably anticipated danger or harm created from an unfastened seatbelt is not suicide by gunshot wound to the head" but injury or death resulting from a vehicle collision or abrupt stop. *See id.*

Similarly here, the reasonably anticipated danger or harm from an officer's duty belt falling off is the officer's resulting inability to quickly grab his gun, taser, or other equipment if needed or, in certain circumstances, a suspect's opportunity to grab such items. But one would not reasonably anticipate that the duty belt's falling off would create the danger of a suspect leaving the officer's presence, entering another business, and stabbing a person with a freshly sharpened knife recently dropped off at the establishment's counter. While those harms could reasonably be anticipated from an officer's negligent *decision* to resecure his duty belt instead of attempting to apprehend a dangerous suspect, the TTCA waives immunity only when the use or condition of the personal property at issue "actually caused the injury." *See Sanchez*, 494 S.W.3d at 726. "[T]hat some [personal] property is merely involved [in the injury] is not enough." *Texas Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001) (holding that hospital's alleged use of medications on patient, which allegedly "masked" his symptoms of meningitis, did not actually cause patient's death; rather, his death was caused by alleged failure to timely diagnose him) (citing *Bossley*, 968 S.W.2d at 342).

We conclude that the real substance of the plaintiffs' claim is that Officer Spradlin made a negligent decision or failed to act as a reasonable officer would in the same circumstances, and we thus follow those cases finding no waiver of immunity when the plaintiff's injuries are too causally attenuated from the alleged but-for cause. *See, e.g.*, *Bossley*, 968 S.W.2d at 343 ("The real substance of plaintiffs' complaint is that [Bossley's] death was caused, not by the condition or use of property, but by the failure of Hillside's staff to restrain him once they learned he was still suicidal."); *Anam*, 623 S.W.3d at 15 ("[T]he real substance of the Anams' claim is that Zachary's suicide was caused not by the failure to refasten his seatbelt or the condition of the seatbelt but by the fact that Wall failed to detect and remove Zachary's

9

gun before putting him in the patrol car."); *Pakdimounivong*, 219 S.W.3d at 412 (improper application of leg restraints and handcuffs did not cause injury but "at most created a condition, a lack of restraint, that allowed Vattana to cause his own death"); *see also Doe*, 907 S.W.2d at 477 (noting that connection between but-for cause and plaintiff's injuries "simply may be too attenuated to constitute legal cause").

Guided by the above-cited precedents, we conclude that the use or condition of Officer Spradlin's duty belt is too causally attenuated from Woodburn's stabbing of Aguilar to constitute a proximate cause of Aguilar's death. *See Bossley*, 968 S.W.2d at 343; *Anam*, 623 S.W.3d at 19. While Aguilar's death was tragic, we cannot agree with the trial court's determination that the pleaded facts create a fact issue concerning proximate cause. Furthermore, we conclude that the alleged facts demonstrate incurable defects in jurisdiction, conclusively negating the existence of jurisdiction, and thus plaintiffs need not be afforded an opportunity to amend their petition.[6] *See Miranda*, 133 S.W.3d at 226–27. We accordingly sustain the City's first issue.[7]

---

[6] We so conclude despite the alleged additional facts appellees cite in their response to the City's plea to the jurisdiction, which facts they contend derive from recent document production related to the City's internal investigation of the incident. The additional alleged facts include (1) a more exact timeline of the events preceding Aguilar's death, indicating that less than three minutes elapsed from the time Officer Spradlin's duty belt came loose to when Woodburn was seen leaving Freebirds after stabbing Aguilar; (2) Officer Spradlin's admissions that (a) he knew he was not wearing keepers or an APD-approved duty belt but responded to the call nonetheless, despite knowing that his duty belt posed a safety concern, and (b) he was distracted when his belt fell off completely and thus did not attempt to stop Woodburn from leaving the coffee shop or give him any verbal commands; and (3) Officer Spradlin's opinion that had he been wearing keepers, his duty belt would have stayed put. These facts do not change our conclusion that the causal relationship between the use or condition of the belt and Aguilar's death is too attenuated.

[7] Because we have sustained the City's first issue, we need not address its second issue, in which it contends that it also enjoys governmental immunity under the so-called "public duty

10

**CONCLUSION**

Having sustained the City's first issue, we reverse the trial court's order and render judgment granting the City's plea to the jurisdiction and dismissing appellees' claims against the City.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, and Kelly
  Dissenting Opinion by Justice Triana

Reversed and Rendered

Filed:   February 10, 2023

---

doctrine," which provides that generally a police officer is not liable for failing to take action to prevent or stop the commission of a crime. *See, e.g.*, *Munoz v. Cameron County*, 725 S.W.2d 319, 321–22 (Tex. App.—Corpus Christi-Edinburg 1986, no writ).